Wilson v. Viking Corporation, Appellant, et al.

154

Argued November 14, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Paul D. Edelman,* for appellant.

*John A. Moss,* with him *Edgar S. Richardson,* for appellee.

Opinion by Stadtfeld, J., December 20, 1938:

This suit was originally begun by a foreign attachment. The defendant entered its appearance and filed its bond to dissolve the attachment, and the suit continued as in assumpsit. The suit was to recover the sum

of $1585 upon a written contract with the defendant, made by its vice-president, A. E. Johnson, on November 3, 1934. At the first trial held on November 25, 1935, a non-suit was entered against the plaintiff on the ground that Mr. Johnson's authority to enter into the contract for the defendant was not shown. On a motion to take off the non-suit, the court made the rule absolute, for the reason that the question of ratification of the contract made by its vice-president should have been left to the jury, because of the acceptance by the corporation, of the benefits of the contract.

A second trial was held on January 12, 1937, which resulted in a verdict for the plaintiff in the sum of $1848.89. The defendant filed a motion for a new trial, as also a motion for judgment non obstante veredicto.

In an opinion by SCHAEFFER, P. J., the court below discharged those rules and judgment was entered on the verdict. This appeal followed.

Viewed in the light most favorable to the plaintiff, in disposing of the motion for judgment n. o. v., the testimony shows that the defendant company in Michigan manufactured automatic sprinklers. Their product was sold in Pennsylvania by a subsidiary, The Viking Automatic Sprinkler Company of Reading. This company was organized in 1927, and the plaintiff was president and general manager. The majority of the stock was held by Mr. Johnson and other officers of the defendant. The plaintiff subscribed for twenty-five shares of the stock, but being unable to pay for it in cash, the cash was advanced by the defendant corporation, along with the balance of the $10,000 of capital of the corporation, and the plaintiff executed his note for $2500 to the said A. E. Johnson. The defendant held his note, together with the stock of the plaintiff, as collateral. From time to time, the plaintiff paid on account of the said note out of his salary by checks of the subsidiary to The Viking Corporation, the defendant, with the knowledge and consent of the defendant.

The installment payments by the plaintiff on his stock amounted to $2250 on November 3, 1934, from which the interest on the note of $2500 was deducted, leaving a net of $1585 which the plaintiff had invested in the stock.

On November 3, 1934, the plaintiff went to the office of the defendant corporation in Hastings, Michigan, where he met Mr. Johnson and Mr. Radford (secretary of defendant company) in the defendant's offices. Mr. Johnson told the plaintiff that they had decided to dissolve the Reading Company and asked for the plaintiff's resignation. The plaintiff, having no prior knowledge of the intention of the defendant to wind up the affairs of the subsidiary in Reading, asked what disposition would be made of the stock that he had been paying for. Mr. Johnson first said the stock had no value, but immediately produced a detailed statement of the interest charges and payments which showed a net of $1585 paid in. Following the discussion as to the resignation and the repayment of the net amount paid in by the plaintiff on his note for the stock, Mr. Johnson then wrote out Exhibits Nos. 2 and 3, which were thereupon executed. Exhibit No. 2 signed by the plaintiff, tendered his resignation as president and manager of the subsidiary corporation, The Viking Automatic Sprinkler Company of Reading, and also released his stock in consideration of the cancellation of the note of $2500. Exhibit No. 3 signed by the defendant by A. E. Johnson, vice-president, agreed to pay the plaintiff $1585 in installments of $250 per month, in consideration of which the plaintiff would not receive a drawing account in their new Pennsylvania company, if he were employed by the new manager, as long as he was receiving the installments on the $1585. The plaintiff was never employed by the new Pennsylvania sales company, and he never received any of the $1585.

Defendant offered no testimony. The case was submitted to the jury to decide whether the two papers

(Exhibits Nos. 2 and 3) were to be considered together as one contract, or as two separate and independent agreements; and whether Mr. Johnson had authority to bind his corporation.

The assignments of error relate to the refusal of judgment non obstante veredicto, the admission of certain evidence and to the charge of the court in submitting the questions above indicated.

The main question is whether the two papers referred to should be construed together as one contract, or two separate and independent agreements.

The plaintiff contends that the two instruments, Exhibits Nos. 2 and 3, constituted one contract; that they embodied the prior discussion of the parties which resulted in the agreement that the plaintiff would resign as president and general manager of The Viking Automatic Sprinkler Company of Reading, subsidiary of the defendant, surrender his stock in that company held by the defendant as collateral to his note; that as consideration, the defendant company would pay the plaintiff $1585, the amount paid in by the plaintiff for the stock, in installments of $250 a month, and would cancel the note held by it.

The plaintiff further contends that the evidence of the circumstances under which the contract was made shows that the parties intended the two writings to be the integration of their agreement; that the evidence shows that Mr. Johnson had apparent authority to deal with the plaintiff with reference to his account with the defendant on the stock transaction; and furthermore, that even if there was no apparent authority to make the contract, the contract was ratified by the defendant by its acceptance of the benefits of it, namely: the resignation of the plaintiff as president of defendant's subsidiary and release of his stock in that corporation.

The two corporations: The Viking Corporation, and the Viking Automatic Sprinkler Company, were so inter-related, both as to individuals and interests, that

all the circumstances connected with the execution of the two papers should be considered in determining the main question. The latter company was organized by the defendant corporation which furnished the entire cash capital. The defendant held plaintiff's note, although payable to Mr. Johnson, for the twenty-five shares of stock for which plaintiff had subscribed and also held his stock as collateral to said note. The payments made on account of the stock were paid to the defendant company. At the meeting held in defendant's office, both Mr. Johnson, vice-president, and Mr. Radford, the secretary, were present. The question of plaintiff's resignation, as also the disposition of plaintiff's stock and the amounts which had been paid thereon were discussed, and Johnson asked plaintiff to resign and to release his stock. After this discussion, the two agreements were prepared by Mr. Johnson and simultaneously executed. These facts were undisputed. Mr. Radford, although present at the trial, was not called to contradict this testimony.

It was clearly, under the circumstances, a question of fact for the jury to determine whether or not the two papers were drawn for the purpose of embodying the entire agreement between the parties. Exhibit No. 2 was unilateral, being executed by plaintiff only, and provided for the resignation of plaintiff and release of his stock, and cancellation of his note. Exhibit No. 3 was executed by plaintiff as well as in the name of the company, and provided for the payment of the exact amount which plaintiff had paid on account of his stock.

As stated in 13 C. J. sec. 487, pp. 528, 529: "Where several instruments are made as part of one transaction, they will be read together, and each will be construed with reference to the other. This is true, although the instruments do not in terms refer to each other. So if two or more agreements are executed at different times as parts of the same transaction they

will be taken and construed together. ......"

In *Parker & Wallace v. Supply Co.*, 186 Pa. 294, 40 A. 518, at p. 298, the Supreme Court, in an opinion by Mr. Justice McCollum, said: "...... It will thus be seen that the preparation of four of the five papers to which we have referred was contemporaneous with or closely followed the application of the plaintiffs to the Oil Well Supply Company to furnish bonds for the dissolution of the attachments. They were obviously the outcome of that application, and they must be construed with reference to it as well as to other matters to which they relate. In construing them the position of the parties, the objects they had in view, and the circumstances surrounding and connected with these transactions must be considered. ......"

In *Howell v. Wheelock*, 115 Pa. Superior Ct. 599, 176 A. 252, this court, in an opinion by Brother Baldrige, discussing the admissibility of oral evidence to prove the alleged intent of the parties that the two instruments should be construed together, said, at p. 603: "...... If, as alleged, this defendant objected to the terms of the provision in the lease respecting the continuation thereof after the expiration of five years, and, at the suggestion of plaintiffs' agent, he sent along with the executed lease a writing stating that the lease was to terminate at the end of five years, and this written modification to the printed form used was received and accepted, *it became an integral part of the lease and was just as binding and effective as if the writing had been physically attached to or embodied in the original instrument.*" (Italics supplied).

From the circumstances, it is reasonable to conclude that plaintiff executed Exhibit No. 2 in reliance on the promise that the money which he had invested in the stock would be repaid to him as shown by Exhibit No. 3. It was all discussed, according to the testimony, and then put in these two writings.

We are of the opinion that taking all the evidence

together, the jury was warranted in finding as a fact that Exhibits Nos. 2 and 3 constituted an integration by the parties of their agreement.

As stated in the Restatement of the Law of Contracts, "Section 228: An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement. An integration is the writing or writings so adopted." The comment to this section states, "That a document was or was not adopted as an integration may be proved by any relevant evidence."

"Section 240 (2): Where no consideration is stated in an integration, facts showing that there was consideration and the nature of it, even if it was a promise, or any other facts that are sufficient to make a promise enforceable, are admissible in evidence and are operative."

"Section 90: A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Error is assigned to the admission of two letters, Exhibits Nos. 4 and 5, written by the defendant to plaintiff in November of 1930 and February 6, 1931, respectively. These were admitted by the trial court for the purpose of showing the apparent authority of Johnson to deal generally, by showing a course of dealing which authorized Johnson to sign the agreement, Exhibit No. 3. These letters showed that Johnson was allowed by the defendant to authorize plaintiff to draw out the moneys which he had paid on account of the note, to apply to the purchase of a house; that these transactions all went through the regular accounts of the company, which came to the attention of the company, and about which no question was ever raised.

Appellant contends that there was lack of consider-

ation for the payment of the money under Exhibit No. 3. In *Bayne v. Proctor & Gamble*, 87 Pa. Superior Ct. 195, the plaintiff sued the defendant to recover a sum of money promised to the plaintiff in consideration of his resigning as manager of the defendant's branch office. The defendant contended that there was no consideration for the promise to pay money because the plaintiff could have been discharged. At p. 201, this court said: "(2.) We do not know just why the defendant was so anxious to secure plaintiff's resignation rather than summarily discharge him, if his work was not satisfactory; but it evidently had a sufficient reason and expected a corresponding benefit, or it would not have carried him on its payroll for a month while it was endeavoring to secure his resignation and been willing to pay him two weeks' or a month's salary as a bonus if he resigned apparently voluntarily. This advantage or benefit, slight though it may be, is sufficient consideration to support the contract. A very slight advantage to one party or a trifling inconvenience to the other is sufficient consideration: ......"

The adequacy of the consideration will not be gone into by the court in the absence of fraud: *Bayne v. Proctor & Gamble,* supra; and, without reference to the surrender of stock by the plaintiff, his resignation as above pointed out was in and of itself sufficient consideration to support the contract.

The case was submitted to the jury in a fair and comprehensive charge and we believe the verdict is fully sustained by the evidence.

Judgment affirmed.