Janice A. RICHBURG,

v.

PALISADES COLLECTION LLC, et al.

Civil Action No. 07–7.

United States District Court,
E.D. Pennsylvania.

Jan. 28, 2008.

David A. Searles, Donovan Searles, LLC, James A. Francis, Francis & Mailman, PC, Philadelphia, PA, for Janice A. Richburg.

Jonathan J. Greystone, Spector Gadon & Rosen, PC, Philadelphia, PA, for Palisades Collection LLC, et al.

## MEMORANDUM

DALZELL, District Judge.

Plaintiff Janice A. Richburg sued defendants Palisades Collection, LLC, ("Palisades") and Wolpoff & Abramson, LLP, ("Wolpoff") in this putative class action for allegedly filing a lawsuit against her to collect a consumer credit card debt after the statute of limitations for such an action had run. Richburg now moves for class certification, and the defendants move for summary judgment. We shall resolve these motions in the order just stated.

### I. *Factual Background*

Richburg bought a computer from Gateway in the summer of 2000. Def.'s Mem.

Opp. Cert. Ex. C. at 82. In October of 2000, she fell behind on her payments. *Id.* Ex. C at 109–10. During a phone conversation between Richburg and a Gateway representative in January of 2001, she stated that someone had stolen the computer and she could no longer make her payments on it because she had been laid off from her job. *Id.* at 134–36. Richburg's debt to Gateway went into default on February 3, 2001. Pl.'s Cert. Mem. Ex. A ¶¶ 10, 11, 24, 25. Gateway assigned this debt to Palisades, who hired Wolpoff to collect it through legal action. *See id.* Ex. C.

Throughout 2003 Palisades attempted to contact Richburg concerning her debt. Def.'s S.J. Mem. Ex. E. On February 27, 2003, a Palisades representative at last successfully contacted her. *Id.* There is some dispute as to what exactly happened in the ensuing conversation, but the parties agree that the representative and Richburg discussed her debt and payment situation, but that Richburg did not agree to pay anything at that time.[1] Def.'s Mem. Opp. Cert. at Ex. E; Pl.'s Cert. Reply Ex. B at 155–56, 158–61.

On September 15, 2006, Wolpoff sent a letter to Richburg on behalf of Palisades demanding payment of $3,807.38 and giving her thirty days to dispute the debt. Pl.'s Cert. Mem. Ex. C. Ten days later, Wolpoff filed a statement of claim in the Philadelphia Municipal Court to initiate the debt collection action against the plaintiff. *Id.* Ex. D. The statement of claim's total repayment demand was for $3,808.20, inclusive of all costs and fees, and it specified the principal as $1,683.46 with $1,706.05 in interest and $336.69 in attorneys' fees. *Id.*

Prior to any contact with Richburg, Wolpoff's partnership had assigned Ronald S. Canter, the Director of Compliance, with the task of compiling a nationwide survey of the statutes of limitations relevant to its debt collection practice. Def. S.J. Mem. Ex. F ¶ 6. Canter examined the applicable statutes, analyzed case law, and discussed legal theories for bringing debt collection claims with other attorneys. *Id.* ¶ 7. Through this pro-

cess Wolpoff created its national statutes of limitations chart, which its attorneys use as an aid in determining whether and when to bring actions against debtors. *Id.* Ex. G. Wolpoff continues to review the applicable law and update the chart when changes to the law occur. *Id.* Ex. F. ¶ 8.

On January 2, 2007, Richburg filed the original complaint alleging violations of the (1) Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), (2) Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. Cons.Stat. Ann. § 2270.1 *et seq.* ("FCEUA"), (3) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons.Stat. Ann. § 201–1 *et seq.* ("UTPCPL"), and (4) the Pennsylvania Loan Interest and Protection Law, 41 Pa. Cons. Stat. Ann. § 101, *et seq.* ("PLIPL"). Compl. ¶ 35–55. The defendants answered on February 16, 2007 and moved for judgment on the pleadings on July 11, 2007, challenging all of plaintiff's claims. In our September 7, 2007 Order, we granted defendants' motion in part, dismissing the PLIPL claim.

As mentioned, Richburg now moves for class certification, and the defendants move for summary judgment.

## II. *Class Certification Standard*

■ The class action device is appropriate in cases where it "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (*quoting Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). A party seeking to certify an action for class litigation must first meet the familiar four requirements of Fed. R.Civ.P. 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the

---

1. The primary disagreement between the parties concerns whether Richburg acknowledged that she owed a debt to Palisades and stated that she would eventually pay that debt back. Palisades's records also show that Palisades representatives

spoke to Richburg on April 1, 2003. Pl.'s Cert. Reply Ex. B at 161–64. Again, Richburg and the defendants are at odds about whether a Palisades' representative actually talked with her, and, if so, what was said.

class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. The shorthand for these four requirements is numerosity, commonality, typicality, and adequacy.

The defendants contend that we should not certify a class because such a device and its champion are subject to sundry defenses that would require individualized fact inquiries for every class member. Although there may be a core of plaintiff's suggested class that would be appropriate to certify, we cannot do so with the present class representative because she is both atypical and inadequate.

Since we will deny Richburg's motion for class certification on typicality and adequacy grounds, we do not reach the Rule 23(b)(3) factors of predominance and superiority.

### III. The Rule 23(a) Factors

Defendants contend that the plaintiff has failed to establish all of the 23(a) factors except numerosity. Though, as noted, we will deny class certification only because of typicality and adequacy, we will address each factor in order to do our *Falcon* "rigorous analysis." For the sake of efficiency we will consider typicality and adequacy together because the defendants' argument considers both factors together.

### A. Numerosity

■■■■ "No definite standard exists concerning a magic number satisfying the numerosity requirement, nor must plaintiff allege the exact number or identity of class members." *Cumberland Farms, Inc. v. Browning–Ferris Industries, Inc.,* 120 F.R.D. 642, 645 (E.D.Pa.1988). Plaintiff states that there are "in excess of 3,100 consumers" who potentially fall into the class. Pl.'s Cert. Mem. at 11, Ex. A ¶¶ 47–57. Courts are permitted to "accept common

sense assumptions" about the numerosity requirement. *In re Linerboard Antitrust Litig.,* 203 F.R.D. 197, 205 (E.D.Pa.2001) (quoting *In re Cephalon Sec. Litig.,* 1998 WL 470160 at *2 (E.D.Pa. Aug.12, 1998)). We find that there are enough class members that individual joinder of them would be impracticable. The requirement of Rule 23(a)(1) is, therefore, satisfied.

### B. Commonality

■■■■ "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994). This low bar recognizes that, even where factual differences may exist between putative class members, the class action may be a useful method of resolving those issues that are common to them all. "Antitrust, price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Sugar Indus. Antitrust Litig.,* 73 F.R.D. 322, 335 (E.D.Pa. 1976).

■ Here, Richburg and all the other putative class members would like to know whether a four- or six-year statute of limitations applies to debt collection actions on consumer debt, and, if the four year statute of limitations applies, would the defendants have a successful bona fide error defense.[2] These questions suffice to satisfy the commonality requirement.

### C. Typicality and Adequacy

■■■■ "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 141 (3d Cir. 1998). In determining whether the named

---

**2.** Our Court of Appeals has recently obliged us to "include in class certification orders a clear and complete summary of those claims, issues, or defenses subject to class treatment." *Wachtel v. Guardian Life Ins. Co.,* 453 F.3d 179, 184 (3d Cir.2006). Although they did not formally saddle counsel with the responsibility of including such a summary in their memoranda to the district

court, we believe that this makes sense. It permits the parties the first attempt at shaping the relevant issues and frees us from rooting around memoranda searching for the class issues, claims, and defenses. We also remind these litigants, and others to come, that boilerplate trial plans consisting of the obvious do not amount to the requisite summary.

plaintiff's claims are typical, we look at whether "the named plaintiff[s'] individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985) (quoting *Weiss v. York Hosp.,* 745 F.2d 786, 809 n. 36 (3d Cir.1984)). Because typicality is concerned primarily with the prevention of conflicts of interest between the named plaintiff(s) and the other class members, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal,* 43 F.3d at 58.

 On the other hand, "[a]dequacy of representation assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Baby Neal,* 43 F.3d at 55. "The adequacy of the class representative is dependant on satisfying two factors: 1) that the plaintiffs' attorney is competent to conduct a class action; and 2) that the class representatives do not have interests antagonistic to the interests of the class." *Linerboard,* 203 F.R.D. at 207.

 Defendants do not contest, and we can find no fault with, the adequacy of plaintiff's counsel, but defendants do argue that Richburg is not typical or adequate because she is subject to unique defenses. Def.'s Mem. Opp. Cert. at 13–16. Questions regarding defenses uniquely available to the defendants against the named plaintiff "bear on both the typicality and adequacy of a class representative." *Beck v. Maximus, Inc.,* 457 F.3d 291, 296 (3d Cir.2006). The fear is that "the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." *Id.* at 297. Thus, to defeat class certification "a defendant must show some degree of likelihood [that] a unique defense will play a significant role at trial," *i.e.,* the parties will spend much of their time and effort leading up to and at trial on issues that bear only on the specifics of the class representative's par-

ticular claim, and will not illuminate, clarify, or assist in determining the liability defendants have to the class as a whole, and will distract the litigants from the concerns of the class. *Id.* at 300. Of course, if we "determine[ ] an asserted unique defense has no merit, the defense will not preclude class certification." *Id.*

Defendants contend that Richburg acknowledged her debt either during the February 27 or April 1, 2003 phone conversations she had with Palisades's representatives. Def. Mem. Opp. Cert. at Ex. E; Pl.'s Cert. Reply Ex. B at 155–56, 158–61. Richburg argues that during the depositions of defendants' representatives, they admitted that she did not agree to pay any of the debt, and, therefore, there is no issue. *Id.* at 11–13. But a closer examination of the deposition testimony shows a real disagreement as to whether Richburg did or did not agree to pay her outstanding balance during the February 27, 2003 conversation with Palisades representatives. *Id.* D at 55–56.

This dispute in the context of this case is no quibble. Acknowledging the debt would toll the statute of limitations and thus eliminate the underlying wrong which Richburg's FDCPA claim seeks to remedy. *See Huntingdon Finance Corp. v. Newtown Artesian Water Co.,* 442 Pa.Super. 406, 659 A.2d 1052, 1054 (1995) ("A clear, distinct and unequivocal acknowledgement of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute"). Acknowledgement is not a defense available to the defendants against the class as a whole. Obviously, some in the putative class would be subject to such a defense, but one cannot infer the efficacy of the acknowledgement defense on a class-wide basis from its efficacy against Richburg.

Richburg claims that the potential acknowledgement is a "minor issue." Pl.'s Cert. Reply at 13. We cannot see how this particular dispute will not be the focus of much attention in this litigation. Whether Richburg acknowledged her debt would certainly be an issue at trial. Resolving that issue will require significant preparation on the part of both parties, and ultimately the question is one of credibility, left for the jury,

and one likely to focus the jury's attention away from the relevant class issues.

On this record, we cannot conclude that the asserted unique defense of acknowledgement lacks merit, and thus Richburg is not a typical or adequate class representative. Therefore, we cannot certify the class with Richburg as the class representative.

## IV. Summary Judgment[3]

 Defendants make four arguments to support their motion: (1) plaintiff's claims rely on a four-year statute of limitations applying to the underlying debt collection action, but a six year statute of limitations actually applies, (2) plaintiff acknowledged the debt during a phone conversation with Palisades, thereby tolling the statute of limitations, (3) plaintiff has presented no evidence that defendants are liable under the FCEUA and UTPCPL, and (4) plaintiff's claims are subject to the bona fide error defense provided in the FDCPA and FCEUA. We deal with each contention in turn.

### A. Statute of Limitations

One of two statutes of limitations applies to the underlying debt collection action in this case. Defendants argue that Pennsylvania's default six year statute of limitations applies because the underlying action is for "account stated." *See* 42 Pa. Con. Stat. Ann. § 5527(b). On the other hand, Richburg con-

tends that the standard four-year statute of limitations for contract actions applies because the underlying transaction involved a contract for the sale of goods. *Id.* § 5525(a)(1). If the defendants are correct, then none of the putative class members have a claim, making this question central to the entire litigation and an answer is necessary before anyone can contemplate resolution. Since the Pennsylvania Supreme Court has not spoken on this particular question, we must engage in the perilous business of "predict[ing] how the state's highest court would decide the issue were it confronted with the problem." *Jaworowski v. Ciasulli,* 490 F.3d 331, 333 (3d Cir.2007) (internal quotations omitted).

 An "account stated" traditionally arises when two parties, who engage in a series of transactions with one another, come together to balance the credits and debits and fix upon a total amount owed. *See David v. Veitscher Magnesitwerke Actien Gesellschaft,* 348 Pa. 335, 35 A.2d 346, 349 (1944). This final tally, once assented to, becomes the "account stated," and any further cause of action is based on this "account stated" rather than on any of the underlying transactions. *Id.*

 The effect of an account stated is that

[t]he amount or balance so agreed upon constitutes a new and independent cause of

---

3. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505.

The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party carries this burden, the non-moving party must "come forward with 'specific facts showing there is a genuine issue for trial.' "

*Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus., Inc. v. Local 825,* 982 F.2d 884, 890 (3d Cir.1992); *Fireman's Ins. Co. of Newark v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982). It is not enough to discredit the moving party's evidence, the non-moving party is required to "present *affirmative* evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. 2505 (emphasis in original). A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence. *See Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505. Also, If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

action, superseding and merging the antecedent causes of action represented by the particular items. It is a liquidated debt, as binding as if evidenced by a note, bill or bond. Though there may be no express promise to pay, yet from the very fact of stating the account the law raises a promise as obligatory as if expressed in writing, to which the same legal incidents attach as if a note or bill were given for the balance.

*Telebase Systems, Inc. v. Gateway Comm'ns, Inc.*, 1988 WL 21845 at *3 (E.D.Pa. March 2, 1988) (quoting 1 Am.Jur.2d *Accounts and Accounting* § 21 at 396–97 (1962)).

Focusing on the description of an "account stated" as a "new and independent cause of action," defendants argue that only Pennsylvania's default six-year statute of limitations can apply because no other relevant provision covers an action for "account stated". Def.'s S.J. Mem. at 7–11. But an action for "account stated" still sounds in contract just like an action for quasi-contract or unjust enrichment, and is no more "independent" from contract actions generally than a negligence action is independent of tort actions generally. The only thing that this "account stated" cause of action is "new and independent" from is the specific contract action(s) one could bring on the underlying transactions.

 Moreover, an "account stated" is just a variety of contract. It is an agreement between debtors and creditors. The parties agree to a consolidated statement of debt, give up their right to bring suit on any of the underlying debts, and create a duty to pay. Restatement (Second) of Contracts § 282 (1981); Restatement of Contracts § 422(1) (1932). The "account stated" is "a debt as a matter of contract implied by law. It is to be considered as one debt, and a recovery may be had upon it without regard to the items which compose it." 29 Williston on Contracts § 73:58 (2007). Pennsylvania law provides a four-year statute of limitations for "contracts implied in law." 42 Pa. Cons.Stat. Ann. § 5525(a)(4). Therefore, whether the underlying action on Richburg's debt is described as an "account stated" or a contract for the sale of goods, it is only subject to Pennsylvania's four-year statute of limitations.

Furthermore, if we ignore the words "account stated" and examine the particular underlying transaction here, the fact that this action sounds in contract becomes pellucid. Suppose Richburg bought a computer from Gateway and signed a credit agreement (which she denies, and defendants fail to present a signed credit agreement). Any agreement to provide a revolving line of credit, whether it be to Janice Richburg or to a major corporation, is at its core a contract to borrow money at a stated interest rate and with an anticipated payment schedule. If, for example, Bank of America sued Intel for such a revolving line of credit, neither of the parties in that action would venture that the applicable statute of limitations was something other than what applies to contract actions. That credit agreement would form the basis for any cause of action, and any such action would, in Pennsylvania, be subject to a four-year statute of limitations. *Id.* § 5525(a)(7). We see no reason why this should not hold true for a credit agreement between Janice Richburg and Gateway.

### B. Acknowledgement of Debt

Defendants argue that even if the four-year statute of limitations applies they have not violated any statute because during the phone conversations either on February 27, 2003 or April 1, 2003, Richburg acknowledged her debt, and this tolled the statute of limitations. Def.'s S.J. Mem. at 11–12. Richburg denies that she conveyed this to Palisades during their conversations on those dates. Pl.'s Mem. Opp. S.J. at 13–16. Whether the acknowledgement defense applies hinges on whose version of events one accepts, and resolving such a question requires making credibility determinations that are left to the jury.

### C. FCEUA and UTPCPL Claims

 Defendants also contend that they did not violate the FCEUA because Wolpoff was not acting as a "debt collector" under the FCEUA when it contacted Richburg. Under the FCEUA, an attorney can be a debt collector for the purposes of the statute "except in connection with the filing or service of pleadings or discovery or the

prosecution of a lawsuit to reduce a debt to judgment." 73 Pa. Cons.Stat. Ann. § 2270.3. The only two contacts Wolpoff had with Richburg were the September 15, 2006 demand letter and the filing of the statement of claim. Pl.'s Cert. Mem. Ex. C, D. Defendants contend that the FCEUA litigation exception covers both of those instances, and thus neither Wolpoff nor Palisades can be liable under the FCEUA because Wolpoff has committed no direct violation of the statute and all of Palisades liability is derivative of Wolpoff's. Def.'s S.J. Mem. at 12–14.

■ Filing the statement of claim could fall within the lawyers' exception to the FCEUA. We did not dismiss this claim when defendants filed for judgment on the pleadings because the statement of claim stated that the defendants had made repeated demands for payment, any of which may have violated the FCEUA. Sept. 7, 2007 Order ¶¶ (t)-(v). We would indeed grant summary judgment to the defendants on the FCEUA claim were the only basis for Richburg's claim against them the statement of claim, but it is not.

■ The September 15, 2007 letter by its own terms states "this is an attempt by a debt collector to collect a debt." Pl.'s Cert. Mem. Ex. C. Furthermore, nowhere in the letter does it make reference to impending legal action or suggest that it is part of an attempt to prosecute a lawsuit. Thus, it does not fall within the ambit of the litigation exception to the FCEAU. Thus, the September 15, 2007 letter creates FCEAU liability for Wolpoff, and, in turn, Palisades, because Wolpoff is Palisades's agent. Furthermore, the letter establishes UTPCPL liability because a violation of the FCEAU is also a violation of the UTPCPL. Therefore, we cannot grant summary judgment to defendants on either of these claims.

■ We also note that regardless of whether the litigation exception covers Wolpoff's contacts with Richburg, Palisades has direct liability under the FCEUA based on the statement of claim. Defendants argue that liability only attaches to Palisades because Wolpoff was its agent and Wolpoff filed the statement of claim. But the gravamen of Richburg's complaint is not Wolpoff's physical act of filing papers in the courthouse—which could be attributed to Palisades through its principal-agent relationship with Wolpoff—but that *Palisades* brought an action to collect a debt against her when it could not. It is Palisades's name in the caption on the statement of claim, and it is Palisades that would recover if successful.

### D. *Bona Fide Error Defense*

■ The defendants argue that they are not liable because Richburg's claims are subject to the bona fide error defense found in the FDCPA and FCEUA. *See* 15 U.S.C. § 1692k(c); 73 Pa. Cons.Stat. Ann. § 2270.5(d). Since the two versions of the defense are the same in element and effect, we will refer only to the FDCPA for the sake of simplicity.[4]

Courts are divided about whether the bona fide error defense applies to mistakes of law or is limited to clerical errors. *See Johnson v. Riddle,* 305 F.3d 1107, 1121 n. 14 (10th Cir.2002) (collecting cases). As yet our Court of Appeals has not ruled on whether the bona fide error defense applies to mistakes of law, so we must seek our guidance outside this Circuit.

Most of the cases holding that the defense does not apply to mistakes of law rely on interpretations of a parallel bona fide error provision in the Truth in Lending Act ("TILA"). *Nielsen v. Dickerson,* 307 F.3d 623, 640–41 (7th Cir.2002); *see also Picht v. Jon R. Hawks, Ltd.,* 236 F.3d 446, 451 (8th Cir.2001) (holding no bona fide error defense for mistakes of law based on *Baker v. G.C.*

---

4. Under the FDCPA, "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

Under the FCEUA, "[a] debt collector or creditor may not be held liable in any action for a violation of this act if the debt collector or creditor shows by a preponderance of the evidence that the violation was both not intentional [and] resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 73 Pa. Cons.Stat. Ann. § 2270.5(d).

*Servs. Corp.*, 677 F.2d 775, 779 (9th Cir.1982) (applying the limitations on TILA's bona fide error defense to the FDCPA because "[s]ection 1692k(c) of the [FDCPA] is *nearly identical* to the bona fide error defense section under [TILA]") (emphasis added)); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989) (relying on *Baker*).

■ But the TILA's bona fide defense specifically excludes mistakes of law. 15 U.S.C. 1640(c) ("an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error"). On the other hand, the FDCPA's bona fide error defense contains *no* specific exclusions or inclusions. *See* 15 U.S.C. 1692k(c). We can see no reason to import language from a different, albeit related, statute to further constrict an already narrow defense. Thus, we side with a "growing minority of courts" that find mistakes of law can satisfy the FDCPA's bona fide error defense. *Johnson,* 305 F.3d at 1121.

To establish the bona fide error defense a defendant has to establish (1) the violation of the FDCPA was unintentional, (2) the FDCPA violation was due to an underlying bona fide error, and (3) the bona fide error occurred despite "maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *see also Beck,* 457 F.3d at 297–98 (citing *Johnson v. Riddle,* 443 F.3d 723, 727–28 (10th Cir.2006) and *Kort v. Diversified Collection Services, Inc.,* 394 F.3d 530, 537 (7th Cir.2005)).

■ The first prong of this defense is a subjective test that requires a credibility determination concerning the debt collector's assertions that the ensuing FDCPA violation was unintentional. *Johnson,* 443 F.3d at 728–29. The defendants deny intentionally violating the FDCPA, and Richburg does not directly contest this part of the defense. Def.'s Mem. Ex. F; Pl.'s Mem. at 23–26. Instead, the focus of their arguments is on the second and third prongs of the defense, which we turn to now.

■ These two prongs of this test are objective ones that require the defendants to establish that the underlying error leading to the FDCPA violation was bona fide and that the defendants maintained reasonable procedures designed to avoid such an error.

*Johnson,* 443 F.3d at 729. When the underlying bona fide error involves a mistake of law, then "whether the debt collector's mistake was bona fide will often turn on the debt collector's due diligence practices." *Id.* In such cases, the second and third prongs merge with "one inquiry driv[ing] the other." *Id.*

■ To assess whether the defendants' procedures satisfy the second and third prongs obliges us to inquire whether any precautions were actually implemented and whether such precautions "were reasonably adapted to avoid the specific error at issue." *Id.* (internal quotations omitted). Since the defendants demonstrate, and Richburg does not contest, that the defendants developed a nationwide survey of statutes of limitations to aid attorneys in determining the applicable law, the defendants have established that precautions were implemented. Thus, the focus of our inquiry narrows further to whether, as a matter of law, the statute of limitations survey was reasonably adapted to avoid the error that occurred.

The facts of *Kort* and *Johnson* are particularly instructive here. In *Kort,* the plaintiff received a form letter from the defendant collection agency that contained an improper calculation of the amount of time provided to pay back the plaintiff's student loan debt. *Kort,* 394 F.3d at 535. The defendant adopted verbatim the form issued by the United States Department of Education, the relevant regulating body, and it was the DOE that had miscalculated the allotted repayment time that formed the basis of the plaintiff's complaint. *Id.* at 533–34.

■ The Seventh Circuit held that the defendant had satisfied the second and third prongs of the bona fide error defense as a matter of law. *Id.* at 539. First, the error was clearly bona fide since the DOE, and not the defendant, computed the time for repayment improperly. *Id.* at 538. Second, the defendant's "complete reliance on the DOE form demonstrate[d] [defendant's] reasonable effort to comply with the statute." *Id.* Thus, a debt collector adopting a regulator's interpretation of the law is a procedure reasonably adapted to avoid an error as to that point of law.

In *Johnson*, the plaintiff kited a check for $2.46 at her local 7–Eleven. *Johnson*, 443 F.3d at 725. The defendant, an attorney retained by the aggrieved convenience store's parent corporation, brought a shoplifting action against the plaintiff under Utah law seeking to recover the face value of the check plus $250 in statutory damages.[5] *Id.* After settling, the plaintiff promptly filed a class action against the defendant alleging that by suing her for shoplifting, when he actually sought to collect a debt, defendant violated the FDCPA. *Id.*

Several years before bringing the shoplifting suit, the defendant's law firm had researched whether Utah's shoplifting statute covered kited checks, and came to the qualified conclusion that state law did not preclude such an action. *Id.* at 725–26. Shortly thereafter, the defendant filed a test case in Utah state court that resulted in an unpublished disposition and default judgment awarding statutory shoplifting penalties. *Id.* at 726.

The Tenth Circuit held that the district court improperly granted summary judgment to the defendants on the bona fide error defense. *Id.* at 732. The panel concluded that a reasonable jury could find that the defendant's procedures were not reasonably adapted to avoid the error. *Id.* at 730. Specifically, a jury could find that the defendant's opinion letter was insufficient to warrant the protection of the bona fide error defense because the defendant had heavily qualified all his conclusions and failed to engage in an *Erie* analysis.[6] *Id.* The Tenth Circuit panel also noted that the jury could also have found that the defendant's test case, which was *ex parte*, involved a single action and was not established as mirroring the facts of suits against the class of debtors to which Johnson belonged, and was "either a sham to set up the bona fide error defense or a true judicial scrutiny of unsettled practices." *Id.* at 731. Thus, when debt collection firms and their lawyers create and rely

on their own expansive statutory interpretations that theoretically would have the effect of insulating them from liability under the FDCPA, the Tenth Circuit held that the jury should determine whether these efforts amount to genuine precautions or are purely self-serving.

Whether Wolpoff's error was bona fide and its procedures reasonable thus remains a question for the jury. Wolpoff's error in this case consists of determining whether the six-year rather than four-year statute of limitations applied to actions to recover consumer credit card debt. Wolpoff argues that the process of developing and maintaining its nationwide statute of limitations chart is a procedure reasonably adapted to avoid the error of applying the wrong statute of limitations to a given action. Pl.'s S.J. Mem. at 17. Wolpoff has not adopted a regulator's—or, for that matter, *any* third party's—interpretation of the law that would permit us to find the statute of limitations survey constitutes a reasonable procedure as a matter of law. Wolpoff attempts to bolster its position by presenting a Pennsylvania Court of Common Pleas opinion where the court held that the "account stated" theory applied to actions to recover a debt on a credit card. Def. S.J. Mem. Ex. H. Nowhere does this decision discuss what statute of limitations applies to such an action. Moreover, regardless of the nature of the action, we have debunked the notion that an "account stated" is subject to anything other than the four-year statute of limitations.

Wolpoff relies exclusively on its own interpretation and efforts in generating the statute of limitations charts and filing its debt collection actions. Much like the opinion letter offered by the *Johnson* defendants, which was also based on mistaken interpretations of state law, a reasonable jury could find that the measures the defendants took were insufficient. Thus, we cannot grant summary

---

5. Under Utah law an action for a dishonored check allows for recovery of the face value of the check plus $15, here totalling $17.46, which was also the amount for which defendant and plaintiff settled. *Johnson*, 443 F.3d at 725.

6. The Tenth Circuit, after conducting the requisite *Erie* analysis, came to the "unmistakably clear and unambiguous conclusion [that] Utah law does not permit a debt collector to claim shoplifting penalties for an ordinary dishonored check." *Johnson*, 443 F.3d at 731 n. 4 (internal quotations omitted).

judgment to defendants and must leave this central issue for resolution before the jury.

### ORDER

AND NOW, this 28th day of January, 2008, upon consideration of plaintiff's motion to certify class (docket entry # 24), the response and reply, and the defendants' motion for summary judgment (docket entry # 28) with its response, reply, and sur-reply, it is hereby ORDERED that:

1. Plaintiff's motion for leave to file a sur-reply is GRANTED;

2. Plaintiff's motion to certify class is DENIED;

3. Defendants' motion for summary judgment is DENIED;

4. Counsel shall CONVENE in Chambers (Room 10613) for a status conference on February 5, 2008 at 2:30 p.m.; and

5. Further scheduling shall ABIDE the status conference.