J-A23017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHONGQING KANGNING BIOENGINEERING CO., LTD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| CONREX PHARMACEUTICAL CORP | : | No. 939 EDA 2020 |

Appeal from the Order Entered February 20, 2020
In the Court of Common Pleas of Chester County Civil Division at No(s):
No. 2019-08925-CT

BEFORE: KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED:  APRIL 19, 2021**

Appellant Chongquing Kangning Bioengineering Co., Ltd., appeals from the order overruling its preliminary objections, which requested arbitration on the counterclaims filed by Appellee Conrex Pharmaceutical Corp.[1]  Appellant contends that the trial court erred by not recognizing that the two agreements at issue are related but separate independent agreements and by holding that

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] "An order overruling preliminary objections is an interlocutory order.  The law is clear, however, that an order overruling preliminary objections that seek to compel arbitration is an interlocutory order appealable as of right pursuant to 42 Pa.C.S. § 7320(a)(1) and Pa.R.A.P. 311(a)(8)." ***In re Estate of Atkinson***, 231 A.3d 891, 897-98 (Pa. Super. 2020).  "Because this case was decided on preliminary objections, we rely on the facts as alleged in the complaint, including its exhibits." ***Khawaja v. RE/MAX Central***, 151 A.3d 626, 627 n.1 (Pa. Super. 2016) (citation omitted).  We may cite to the parties' reproduced record for their convenience.

Appellant waived its right to arbitration. Appellant concedes in its brief that the agreements are related, but argues that as a matter of law that the agreements are treated as separate. We agree and reverse.

We state the facts as pled in Appellant's complaint. Appellant is a Chinese corporation, and Appellee is a Pennsylvania corporation. R.R. at 1a. On October 18, 2012, the parties executed a contract (October 2012 contract) in which Appellant was the exclusive agent of Appellee's skincare products in China. *Id.* at 2a. The October 2012 contract contains a mandatory arbitration clause, which states in relevant part that "the parties shall resolve any dispute arising from this contract through negotiation. If no agreement can be reached, [the parties] both agree" to arbitration. *Id.* at 58a (formatting altered).

Per the October 2012 contract, Appellant paid Appellee $599,985.00 "for products and services and also advances for future products and services." *Id.* at 2a. Appellee delivered goods and services worth around $354,811.13. *Id.* Appellant contends that after costs and other expenses, Appellee still owes Appellant at least $243,192.41. *Id.*

In a November 16, 2018 letter (2018 confirmation letter) signed by the parties, they agreed that Appellee owed Appellant $243,192.41:

> [Appellant] and [Appellee] executed the [October 2012 contract]. [Appellant's] financial records show we made a number of payments totaling $599,985.00 US dollars for the ordered goods pursuant to the above Agreement and [Appellee] has delivered goods and charged for the associated costs, which total $345,811.13 US dollars, as of October 12, 2018.

- 2 -

> Our President Wang Qiong and your President Phyllis Hsieh hereby agree on the following accounts after their audit of the delivery of goods and the transfer of funds: . . . .

*Id.* at 79a. Attached to the letter were tables and exhibits listing financial transactions, which essentially showed that Appellee owed Appellant $243,192.41. *See, e.g.*, *id.* at 91a.

On March 6, 2019, Appellee sent a letter to Appellant to terminate the October 2012 contract. *Id.* at 3a. Appellant countered that Appellee could not unilaterally terminate the October 2012 contract, but was willing to end the business relationship as long as Appellee repaid Appellant the amount still owed. *Id.*

Appellee failed to repay, however, which resulted in Appellant filling the instant complaint on September 4, 2019, against Appellee. *Id.* at 1a. Appellant sued Appellee for breach of the 2018 confirmation letter, unjust enrichment, conversion, and account stated. *Id.* at 1a-5a. Appellant requested damages in the amount owed of $243,192.41, plus interest, costs, and expenses. *Id.* at 5a.

On October 9, 2019, Appellee filed an answer, new matter, and counterclaims. *Id.* at 12a. Specifically, Appellee filed counterclaims for breach of the October 2012 contract and for unfair competition. *Id.* at 19a-20a. On December 4, 2019, Appellant filed preliminary objections, which contended that Appellee's counterclaims based on the October 2012 contract were subject to that contract's mandatory arbitration clause. *Id.* at 36a, 40a.

On February 20, 2020, the trial court overruled Appellant's preliminary objections and ordered Appellant to file an answer to Appellee's counterclaims. Order, 2/20/20. In relevant part, the trial court concisely held that the "two alleged contracts are intertwined." *Id.* at n.1.[2] The trial court further held that Appellant, "[b]y initiating the instant action for breach of the [2018 confirmation letter] which would not exist without the [October 2012 contract, Appellant] has waived its right to demand arbitration on [Appellee's] counterclaims." *Id.*; *accord* Trial Ct. Op., 4/29/20, at 2-3.

On March 20, 2020, Appellant filed a timely notice of appeal.[3] Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issue on appeal:

1. Did the trial court err as a matter of law by failing to recognize that the 2018 confirmation letter—an agreement with no arbitration provision—is separate and distinct from the [October 2012 contract]?

2. Did the trial court err as a matter of law in finding [Appellant] intentionally waived the mandatory arbitration provision in the [October 2012 contract] when [Appellant] only asserted claims arising from a 2018 confirmation letter containing no such provision, and [Appellant] used its first opportunity to seek dismissal of counterclaims that are properly adjudicated through binding arbitration?

---

[2] The trial court cited no legal authorities in support of its holding or otherwise explained its legal reasoning on this point.

[3] Meanwhile, on March 5, 2020, Appellant filed a motion for reconsideration. On March 25, 2020, the trial court dismissed Appellant's motion for reconsideration as moot due to the pending appeal. Order, 3/25/20.

Appellant's Brief at 5 (formatting altered).

In support of its first issue, Appellant argues that the 2018 confirmation letter is an agreement separate from the October 2012 contract. *Id.* at 13. In Appellant's view, those two agreements are separate because there was no integration clause in the 2018 confirmation letter incorporating the October 2012 contract. *Id.* at 13-14. Appellant notes that the October 2012 contract "deals with the parties establishing their relationship six years [prior to the 2018 confirmation letter] and addresses events that might happen in the future, such as trademark usage, product purchasing, and ownership of goods outlined therein" and was made under circumstances different than the 2018 confirmation letter. *Id.* at 15. Appellant contends that because the 2018 confirmation letter stands independently and does not contain an arbitration provision, the parties cannot arbitrate any counterclaims related to the 2018 confirmation letter.[4] *Id.* at 15.

The ***Atkinson*** Court set forth our standard of review as follows:

[W]e employ a two-part test to determine whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement. Whether a written contract includes an arbitration agreement and whether the parties' dispute is within the scope of the arbitration

---

[4] Appellee primarily argued that Appellant waived its right to arbitration. Appellee's Brief at 3-4. In response to Appellant's contention that the 2018 confirmation letter is a separate agreement, Appellee concisely argued that the 2018 confirmation letter "manifestly is not a separate agreement." *Id.* at 4.

agreement are questions of law subject to this Court's plenary review.

*Atkinson*, 231 A.3d at 897-98 (citations omitted and formatting altered).

Here, no party disputes that the October 2012 contract has a valid arbitration clause. **See** R.R. at 58a; Order, 2/20/20, at 1 n.1; *Atkinson*, 231 A.3d at 897-98. Therefore, we examine whether the instant dispute involving the 2018 confirmation letter is within the scope of the October 2012 contract's arbitration clause, *i.e.*, whether the two writings are intertwined. **See** *Atkinson*, 231 A.3d at 897-98.

In determining whether two writings should be considered the same or distinct agreements, we are guided by the following:

> If contracting parties choose, they may express their agreement in one or more writings and, in such circumstances, the several documents are to be interpreted together, each one contributing (to the extent of its worth) to the ascertainment of the true intent of the parties. And, where it can be shown by competent evidence that no single writing embodied or was intended to embody the whole of the parties' understanding, the parol evidence rule has no application.

*Int'l Milling Co. v. Hachmeister, Inc.*, 110 A.2d 186, 191 (Pa. 1955) (citations omitted).[5] "So if two or more agreements are executed at different

---

[5] Like the *Int'l Milling* Court, in *Neville v. Scott*, 127 A.2d 755 (Pa. Super. 1956), the Court stated that "[w]here several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." *Neville*, 127 A.2d at 757 (citations omitted).

times as parts of the same transaction they will be taken and construed together." **Wilson v. Viking Corp.**, 3 A.2d 180, 183 (Pa. Super. 1938) (citation omitted).

"Where contracts are put into several instruments, each of which has a sensible meaning and may have a full operation by itself, it would be a hazardous assumption to put them together for the purpose of making them mean, as one, something different from what they could in a separate state." **Small v. Small**, 137 A.2d 870, 873 (Pa. Super. 1958) (citation omitted). If the two contracts are separate and independent, then a "breach on one, therefore, cannot be the basis of default in the other." **Id.**

There are several types of writings that are defined as contracts as a matter of law. For example, an "account stated" is "an account in writing examined and accepted by both parties." **Leinbach v. Wolle**, 61 A. 248 (Pa. 1905) (*per curiam*). It is "an agreement to, or acquiescence in, the correctness of the account [owed], so that in proving the account stated, it is not necessary to show the nature of the original transaction, or indebtedness, or to set forth the items entering into the account." **David v. Veitscher Magnesitwerke Actien Gesellschaft**, 35 A.2d 346, 349 (Pa. 1944).[6] One

_____

[6] **Accord** 13 Standard Pa. Practice 2d § 13:122 (explaining that an "'account stated' is an independent contract that arises from the rendition of an account and the failure of the debtor, for a reasonable time, to object thereto" (footnote omitted)).

federal district court aptly distilled Pennsylvania law in explaining that an "account stated" is a form of contract:

> an "account stated" is just a variety of contract. It is an agreement between debtors and creditors. The parties agree to a consolidated statement of debt, give up their right to bring suit on any of the underlying debts, and create a duty to pay. Restatement (Second) of Contracts § 282 (1981);[7] Restatement of Contracts § 422(1) (1932). The "account stated" is "a debt as a matter of contract implied by law. It is to be considered as one debt, and a recovery may be had upon it without regard to the items which compose it." 29 Williston on Contracts § 73:58 (2007).

***Richburg v. Palisades Collection LLC***, 247 F.R.D. 457, 465 (E.D. Pa. 2008)

---

[7] The Restatement (Second) of Contracts § 282 defines "account stated" as follows:

> (1) An account stated is a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent.

> (2) The account stated does not itself discharge any duty but is an admission by each party of the facts asserted and a promise by the debtor to pay according to its terms.

Restatement (Second) of Contracts § 282 (1981). Similarly, "an 'account stated' is an agreement, based on prior transactions between the parties, that the items of the account are true and that the balance previously arrived at is due and owing by the debtor to the creditor. When the account has thus been assented to, it becomes a new contract." ***See*** 29 Williston on Contracts § 73:55 (4th ed.) (2020). "An account stated is nothing more or less than a contract express or implied between the parties. It is an agreement which they have come to regarding the amount due on past transactions." ***Id.***

(summarizing Pennsylvania law);[8] ***Donahue v. City of Phila.***, 41 A.2d 879, 880-81 (Pa. Super. 1945) (quoting Restatement of Contracts § 422, in resolving account stated issue).

The effect of an account stated is that

> the amount or balance so agreed upon constitutes a new and independent cause of action, superseding and merging the antecedent causes of action represented by the particular items.  It is a liquidated debt, as binding as if evidenced by a note, bill or bond.  Though there may be no express promise to pay, yet from the very fact of stating the account the law raises a promise as obligatory as if expressed in writing, to which the same legal incidents attach as if a note or bill were given for the balance.

***Richburg***, 247 F.R.D. at 464-65 (some citations omitted and formatting altered); ***accord Donahue***, 41 A.2d at 880-81.

Here, Appellee has not argued or otherwise cited to anything of record establishing that the October 2012 contract must be taken and construed together with the 2018 confirmation letter, *i.e.*, the October 2012 contract was not "intended to embody the whole of the parties' understanding."  ***See Int'l Milling***, 110 A.2d at 191; ***Wilson***, 3 A.2d at 183; ***see also*** Appellee's Brief at 4 (asserting that the 2018 confirmation letter is "manifestly . . . not a separate agreement").  In other words, Appellee has not identified "competent

---

[8] "Federal district court decisions offer this Court persuasive, but not binding, authority." ***Nicholas v. Hofmann***, 158 A.3d 675, 690 n.21 (Pa. Super. 2017) (citation omitted).  The ***Richburg*** court was examining whether an account stated claim was subject to Pennsylvania's four-year statute of limitations for contracts.  ***Richburg***, 247 F.R.D. at 464.

evidence" that when the parties executed the October 2012 contract, they intended to execute another instrument six years later that would form the whole of the parties' understanding. **See Int'l Milling**, 110 A.2d at 191; **Wilson**, 3 A.2d at 183. To paraphrase **Small**, no evidence exists that the instant parties contemplated or otherwise required the execution, six years later, of the 2018 confirmation letter in order for them to comply with their contractual obligations under the October 2012 contract, including "trademark usage, product purchasing, and ownership of goods." **See** Appellant's Brief at 15; **Small**, 137 A.2d at 873.

Furthermore, the 2018 confirmation letter states that the parties "hereby agree on the following accounts after their audit of the delivery of goods and the transfer of funds," and the amount of $243,191.41 owed by Appellee to Appellant. R.R. at 79a, 91a. In our view, the 2018 confirmation letter fulfills the requirements of an "account stated," *i.e.*, an independent contract. **See David**, 35 A.2d at 349; **accord Richburg**, 247 F.R.D. at 465. As in **David** and **Donohue**, Appellant and Appellee agreed upon the correctness of the amount owed. **See David**, 35 A.2d at 349; **Donahue**, 41 A.2d at 880-81; **accord Richburg**, 247 F.R.D. at 465. For these reasons, we conclude the trial court erred as a matter of law in holding that the October 2012 contract was intertwined with the 2018 confirmation letter. **See Atkinson**, 231 A.3d at 897-98.

Because we have granted relief on Appellant's first issue, we need not address its remaining issue. **See Fell v. 340 Assocs., LLC**, 125 A.3d 75, 84 n.13 (Pa. Super. 2015). We note, however, that the trial court's holding, which was that Appellant waived its right to request arbitration on Appellee's counterclaims, is dependent upon its erroneous reasoning that the 2018 confirmation letter is intertwined with the October 2012 contract. **See** Trial Ct. Op., 4/29/20, at 2; Order, 2/20/20, at 1 n.1. It follows that the trial court erred in holding that Appellant waived its right to arbitrate any disputes arising from the separate, distinct, and independent October 2012 contract.[9] **See** Trial Ct. Op., 4/29/20, at 2.

In sum, we hold that the October 2012 contract and the 2018 confirmation letter, although related, are two distinct, separate, and independent agreements. We also hold that the trial court erred in ruling that Appellant waived its right to request arbitration of Appellee's counterclaims. For these reasons, we reverse the order overruling Appellant's preliminary objections.

---

[9] Regardless, the trial court erred by not properly applying the five-factor test set forth in **O'Donnell v. Hovnanian Enterprises, Inc.**, 29 A.3d 1183 (Pa. Super. 2011), and **Maxatawny Twp. v. Kutztown Borough**, 113 A.3d 895 (Pa. Cmwlth. 2015). Specifically, the trial court failed to resolve whether Appellant "(1) failed to raise the issue of arbitration promptly, (2) engaged in discovery, (3) filed pretrial motions which do not raise the issue of arbitration, (4) waited for adverse rulings on pretrial motions before asserting arbitration, or (5) waited until the case is ready for trial before asserting arbitration." **See O'Donnell**, 29 A.3d at 1187 (formatting altered).

- 11 -

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/19/21