J-A24045-16

2016 PA Super 261

| HUMERA KHAWAJA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| RE/MAX CENTRAL | |
| Appellee | No. 3776 EDA 2015 |

Appeal from the Order Entered November 20, 2015
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2015-C-1511

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

OPINION BY SOLANO, J.:                    **FILED NOVEMBER 23, 2016**

Appellant Humera Khawaja appeals from an order entered on November 20, 2015, that sustained the preliminary objections of Appellee RE/MAX Central and dismissed Khawaja's complaint.  We affirm in part, reverse in part, and remand.

According to her complaint,[1] Khawaja is a licensed real estate agent who entered into a one-year Agreement on January 19, 2015, to act as an independent contractor with RE/MAX, a licensed real estate broker.  Compl. at 2 ¶ 8; Agreement (Compl., Ex. "A").  Pursuant to the Agreement, RE/MAX would provide Khawaja with office space, administrative support, and other

---

[1] Because this case was decided on preliminary objections, we rely on the facts as alleged in the complaint, including its exhibits.  *See Albert v. Erie Ins. Exch.,* 65 A.3d 923, 928 (Pa. Super. 2013) ("In an appeal from an order granting preliminary objections in the nature of a demurrer we accept as true all well-pleaded material facts in the complaint, as well as all reasonable inferences deducible therefrom").

services.  Compl. at 3 ¶ 10.  In exchange, Khawaja worked on a "100% commission concept," in which 30% of Khawaja's commissions would be withheld by RE/MAX to pay for support and services up to a total of $17,163. Compl. at 2-3 ¶¶ 4, 11; Agreement (Compl., Ex. "A") ¶¶ 8,11.  After that amount was satisfied, Khawaja would receive 100% of any further commissions she earned.  Compl. at 2 ¶ 7.

The applicable terms governing this arrangement are set forth in Paragraphs 8(A) and 11(A) of the Agreement, which read:

8.  COMMISSIONS

A.     All commissions payable to Contractor will be collected by RE/MAX and transmitted with 30% retained by RE/MAX and 70% to Contractor.  Contractor is responsible for 1% Broker Service Fee.  Commissions are earned at time of Agreement of Sale but not collected until settlement. Independent Contractor Agreement in force at the time of Agreement of Sale is how commission splits will be disbursed.

. . .

11.     CONTRACTOR FEES

. . .

A.     Contractor agrees to allow RE/MAX to withhold 30 percent (30%) from Contractor's commission income to compensate RE/MAX $17,163.00 (yearly amount) as a Fixed & Administrative Expense Fee during the term of this Agreement.  These Fixed Expenses are for an office expense of $831.25 per month and administrative fee of $599.00 per month.  This monthly figure shall be for a one-year period according to the terms of the contract.  All income in excess of the Fixed Expense Fee shall be paid to the Contractor for the duration of this one (1) year contract, subject to Paragraphs 12 ["Late Charges"] and 14 ["Termination"] of this Agreement.

Agreement (Compl., Ex. "A") at 5-6 ¶¶ 8(A), 11(A).

RE/MAX terminated its Agreement with Khawaja on April 22, 2015. Compl. at 4 ¶ 20.[2] At that time, Khawaja had several pending listings of properties with RE/MAX. *Id.* at ¶ 21. Some of the listings had closed prior to the filing of this lawsuit, and some listings remained open at the time the suit was filed. Trial Court Opinion, 3/1/16, at 1-2. Paragraph 14 of the Agreement governs payments to real estate agents for transactions pending at the time the Agreement is terminated:

> 14. TERMINATION
> . . .
> D. Transactions Pending
>
> In the event the Contractor terminates and any transaction(s) pending require(s) further work normally rendered by the Contractor, RE/MAX may at its sole discretion make arrangements with the Contractor to perform the required work, or Broker may assign an agent to complete the transaction. Direct out-of-pocket expenses incurred by RE/MAX and a twenty percent (20%) referral fee for the manager completing the work shall be deducted from terminated Contractor's commission(s).
>
> E. Commissions Received After Termination
>
> After notice by either party of intent to terminate this Agreement, should RE/MAX receive any sales commissions as a result of transactions initiated by Contractor, subject to Sub-paragraph "D" above, they shall be applied, in total, first to the payment of late charges, then to interest, then to any outstanding balance owed RE/MAX, and, if any, the remainder shall be paid to the Contractor.

---

[2] Both parties agree that RE/MAX terminated the Agreement. *See* Compl. at 4 ¶ 20; Prelim. Objections at 2 ¶ 7. Although Khawaja claims she was terminated without cause, and RE/MAX claims that she was terminated for cause, that issue is not relevant here. *See* Trial Court Opinion, 3/1/16, at 2.

Agreement (Compl., Ex. "A") at 9 ¶14(D)-(E). Khawaja alleges that RE/MAX received commissions after she was terminated and, in violation of the Agreement, failed to pay those commissions to Khawaja. Compl. at 4-5 ¶¶ 21, 23, 27-28.

On May 11, 2015, Khawaja commenced this action to recover the unpaid commissions. Her complaint alleged breach of contract and unjust enrichment.[3] On May 22, 2015 and June 2, 2015, RE/MAX issued checks to Khawaja for commissions to which it agreed Khawaja was entitled under the Agreement. It withheld from the commissions the 20% "referral fee" referenced in Paragraph 14(D) of the Agreement. *See* Prelim. Objections ¶¶ 27-28 & Exs. "A," "B." On June 9, 2015, RE/MAX filed preliminary objections in the nature of a demurrer that asserted that Khawaja was entitled to no additional payments.

On July 10, 2015, the trial court entered an order directing the parties "to establish and create any facts of record necessary to the disposition of the Preliminary Objections" and scheduling argument on the preliminary objections for September 4, 2015. On the date scheduled for argument, each party filed affidavits. RE/MAX submitted an affidavit by its principal, Thomas Skiffington, that was dated August 6, 2015, and stated that RE/MAX had paid Khawaja "all commissions due and owing" under the Agreement for

---

[3] Her complaint also included a count requesting equitable relief. The trial court dismissed that count, and Khawaja does not appeal that part of the trial court's decision.

- 4 -

transactions that closed after her termination. Skiffington Aff., 8/6/15, ¶ 7. He attached a spreadsheet showing deductions that RE/MAX made from those commissions, including deduction of the 20% "referral fee." *Id.* ¶¶ 8-9 & Ex. "A." Khawaja submitted her own affidavit listing properties for which she claimed commissions still were due and owed to her and stating her disagreement with Mr. Skiffington's assertions. She claimed RE/MAX owes her $26,982.86. Khawaja Aff., 9/4/15, ¶¶ 7-9 & Exs. "A" & "B."

The trial court sustained RE/MAX's preliminary objections in an order dated November 20, 2015. In its order, the trial court stated:

> Plaintiff is correct that Section 14D of the Independent Contractor Agreement does not apply in this instance because Plaintiff was terminated by RE/MAX Central; Plaintiff did not terminate the contract. After a thorough reading of the Independent Contractor Agreement, we find Defendant RE/MAX Central's generous interpretation of the contract to Plaintiff's benefit. Plaintiff failed to set forth a cause of action indicating she is entitled to more.

Trial Court Order, 11/20/15, at 1-2 n.1. This appeal followed.

In her brief, Khawaja raises the following four issues:

1. Did The Lower Court Err By Granting [RE/MAX's] Demurrer After Expressly Finding [RE/MAX's] Sole Defense To [Khawaja]'s Complaint Was Unfounded?

2. Did The Lower Court Err By Entering Final Judgment On [RE/MAX's] Demurrer Where It Was Evident That The Claimed Deficiency Could Have Been Cured By Permitting An Amendment To [Khawaja]'s Complaint?

3. Did The Lower Court Err By Dismissing [Khawaja]'s Unjust Enrichment Claim Because A Breach Of Contract Claim Was Asserted In The Alternative?

4. Did The Lower Court Err By Expressly Acknowledging That It Committed Error, But Then Disregarded It?

Khawaja's Brief at 4.

On March 16, 2016, the trial court filed an opinion pursuant to Appellate Rule 1925. Focusing on Khawaja's claim that she was entitled to commissions due on listings that closed after she was terminated, the court reviewed the competing affidavits and found that Khawaja did not include in her submissions the closing dates for the properties to which she claimed commissions and therefore had failed to provide "necessary elements for determining the amounts due pursuant to Paragraph 8 of the Agreement." Trial Court Opinion, 3/16/16, at 4. Accordingly, the court said, "the facts asserted by [RE/MAX] "essentially remained unrefuted." *Id.*

The court then lamented its consideration of the affidavits, stating that it was "in error" to receive them because preliminary objections should be decided only on the pleadings. Trial Court Opinion, 3/16/16, at 4. "By submitting affidavits," the court said," both counsel invited the consideration of matters which would have been more properly addressed by a motion for summary judgment." *Id.* The court said that because defense counsel did not object to consideration of the affidavits, RE/MAX had waived this error. *Id.*

The court then stated the following holding on the breach of contract claim:

        We conclude the following:  Paragraph 8 of the Agreement
    is the only paragraph which applies to Plaintiff's right of
    recovery.  Therefore, to the extent that the complaint alleges
    contractual rights of recovery in excess of Paragraph 8, the
    demurrer is sustained.  Our order should have allowed the case
    to proceed on Count I, and to that extent we were in error.
    However, we point out that the error was prompted by the
    Defendant's complicity in submitting an affidavit and in failing to
    object to the court's consideration of same.

Trial Court Opinion, 3/16/16, at 4-5.  In later pages of its opinion, the court

said it had properly dismissed Khawaja's claim for unjust enrichment

because Khawaja had pleaded an entitlement to the commissions under an

express contract and an unjust enrichment claim is incompatible with such a

contract claim.  **Id.** at 5-6 (citing, **e.g.**, **Villoresi v. Femminella**, 856 A.2d

78, 84 (Pa. Super. 2004)).

        Our standard of review is as follows:

        Our standard of review of an order of the trial court overruling or
        granting preliminary objections is to determine whether the trial
        court committed an error of law.  When considering the
        appropriateness of a ruling on preliminary objections, the
        appellate court must apply the same standard as the trial court.

        Preliminary objections in the nature of a demurrer test the legal
        sufficiency of the complaint.  When considering preliminary
        objections, all material facts set forth in the challenged pleadings
        are admitted as true, as well as all inferences reasonably
        deducible therefrom.  Preliminary objections which seek the
        dismissal of a cause of action should be sustained only in cases
        in which it is clear and free from doubt that the pleader will be
        unable to prove facts legally sufficient to establish the right to
        relief.  If any doubt exists as to whether a demurrer should be
        sustained, it should be resolved in favor of overruling the
        preliminary objections.

*Perelman v. Perelman*, 125 A.3d 1259, 1263 (Pa. Super. 2015), ***appeal***

***denied***, 141 A.3d 435 (Pa. 2016) (internal citations and quotation marks

omitted).

**Breach of Contract**

With respect to her first issue, Khawaja contends that the trial court's

order dismissing her breach of contract claim contains erroneous logic that

wrongly permits RE/MAX to withhold $26,982.86 of her earned commissions.

Khawaja's Brief at 15-16. Khawaja claims that RE/MAX already has withheld

the full $17,163 in expense fees to which it is entitled under Paragraph

11(A) of the Agreement and that she therefore should be paid 100% of the

commissions earned on listings that closed after her termination, pursuant

Paragraph 14(E) of the Agreement. RE/MAX responds that it has paid

Khawaja all of the commissions to which she is entitled and that any money

it has retained consists mainly of the 20% "referral fee" authorized under

Paragraph 14(D) of the Agreement. RE/MAX's Brief at 10.

The trial court's November 20, 2015 order held that Paragraph 14(D)

did not permit RE/MAX to withhold referral fees because Paragraph 14(D)

applies only to cases in which the real estate agent — here, plaintiff Khawaja

— terminates the Agreement, and not to terminations by RE/MAX. As the

court emphasized, "Plaintiff did not terminate the contract." Trial Court

Order, 11/20/15, at 1 n.1. But the trial court nevertheless held that the

case should be dismissed because RE/MAX's "generous interpretation of the

contract [is] to Plaintiff's benefit" and Khawaja failed to state a claim to entitlement to more than RE/MAX had already paid her. *Id.* at 2 n.1. The court did not further explain this reasoning, and in its Rule 1925 opinion, it apparently stepped back from this second part of its order. The Rule 1925 opinion states that Paragraph 8 "is the only paragraph which applies to [Khawaja's] recovery," thus apparently adhering to the court's original view that Paragraph 14(D) is inapplicable; then, the opinion adds that the court's failure to allow Khawaja to proceed on her breach of contract claim was "in error." Trial Court Opinion, 3/16/16, at 4.

We interpret all of this to mean that the trial court concluded the following: RE/MAX's defense based on Paragraph 14(D) is without merit; Khawaja's contract claim therefore is not subject to dismissal on the basis of that Paragraph 14(D) defense; and, contrary to what the court initially said in its November 20, 2015 order, Khawaja is entitled to proceed on her contract claim for recovery of damages under the remainder of the Agreement. With this understanding of the trial court's decision, we agree, and we therefore reverse and remand to correct the error in the November 20, 2015 order that was recognized by the trial court.

First, we agree that Paragraph 14(D) of the Agreement does not give RE/MAX a right to retain 20% of the commissions as a "referral fee." The paragraph reads:

> ***In the event the Contractor terminates*** and any transaction(s) pending require(s) work normally rendered by the

Contractor, RE/MAX may at its sole discretion make arrangements with the Contractor to perform the required work, or Broker may assign an agent to complete the transaction. Direct out-of-pocket expenses incurred by RE/MAX and a twenty percent (20%) referral fee for the manager completing the work shall be deducted from terminated Contractor's commission(s).

Agreement (Compl., Ex. "A") at 9 ¶ 14(D) (emphasis added).[4] When interpreting a contract, "[t]o discern the parties' intent, the court must give effect to clear and unambiguous terms without reference to matters outside the contract." **Anchel v. Shea**, 762 A.2d 346, 352 (Pa. Super. 2000) (internal citations and quotation marks omitted). By its plain terms, Paragraph 14(D) applies only "[i]n the event the Contractor terminates" the Agreement. The definition of "Contractor" is set forth at the very beginning of the Agreement:

THIS AGREEMENT made and entered into this 19th day of January, 2015, and effective date February 1, 2015 by and between RE/MAX Central (hereinafter called "RE/MAX") . . . and Humera Khawaja (hereinafter called "CONTRACTOR") . . . .

Agreement (Compl., Ex. "A") at 1. Clearly, then, the reference in Paragraph 14(D) to "the Contractor" is to Khawaja, and the paragraph applies only if Khawaja terminates the Agreement. The parties agree that RE/MAX terminated the Agreement, not Khawaja. Compl. at 4 ¶ 20; Prelim. Objections, at 2 ¶ 7. Therefore, Paragraph 14(D) is inapplicable, and RE/MAX has no right to claim a "referral fee" under it.

---

[4] We have found no reported decisions interpreting this provision.

RE/MAX argues that this interpretation is incorrect because the sentence setting forth its right to a referral fee (the final sentence of Paragraph 14(D)) states that "a twenty percent (20%) referral fee for the manager completing the work shall be deducted *from terminated Contractor's commission(s)*." Agreement (Compl., Ex. "A") at 9 ¶ 14(D) (emphasis added). RE/MAX contends that the phrase "terminated Contractor" refers to **any** terminated contractor, regardless of whether the Agreement was terminated by the contractor or by RE/MAX. RE/MAX's Brief at 10-11. We disagree.

We interpret provisions of a contract in light of the context in which they appear. *Reilly v. City Deposit Bank & Trust Co.*, 185 A. 620, 623 (Pa. 1936) (in interpreting contracts, that sense of words used should be adopted which best harmonizes with context and promotes in the fullest manner the objects of the parties). Paragraph 14(D) is a single paragraph addressing what happens to pending transactions when a real estate agent terminates the Agreement. It authorizes RE/MAX to arrange for the agent to continue working on the listing or to assign another agent to complete the transaction, and it then provides for RE/MAX to be paid its expenses resulting from the agent's termination of the Agreement and for payment of a referral fee relating to the hiring of a new manager to complete the transaction. There is no indication in Paragraph 14(D) that the references in its last sentence to payment of expenses and a referral fee have a broader

application than the rest of the paragraph, which relates only to terminations by an agent ("the Contractor").[5] Indeed, the Agreement's succeeding paragraph, 14(E), lists the categories of payments (late charges, interest, and outstanding balances) that are to be subtracted from commissions when there is "notice **by either party** of intent to terminate this Agreement." **See** Agreement (Compl., Ex. "A") at 9 ¶ 14(E) (emphasis added). Referral fees are not in that list.

Because Paragraph 14(D) provides no defense to Khawaja's claim for breach of contract, it provides no ground for dismissal of that claim.[6] The trial court's Rule 1925 opinion recognized this fact, stating that the court's dismissal was "in error." Trial Court Opinion, 3/16/16, at 4. We agree, and

---

[5] RE/MAX contends that the "referral fee" provision merely "memorializes" the idea that, once a second agent is assigned to complete the transaction, that agent and the original agent will share compensation, and RE/MAX suggests that the 20% fee is intended to allocate commissions between the two agents. **See** RE/MAX's Brief at 10. But a separate provision of the Agreement, Paragraph 8(C), provides for shared commissions. It states:

> In the event that two or more Contractors participate in a transaction, the commission shall be divided between the participating contractors according to the agreement between them or by arbitration.

Because this provision already provides for allocation of the commissions, Paragraph 14(D) has no role to play in that task.

[6] Although we agree that Paragraph 14(D) is inapplicable, we do not necessarily agree with the trial court's statement that "Paragraph 8 of the Agreement is the only paragraph that applies to Plaintiff's right of recovery." Trial Court Opinion, 3/16/16, at 4. As our opinion notes, several other paragraphs of the Agreement may be implicated here, and we take no position on whether or how they may apply.

we therefore reverse and remand for further proceedings on Counts I and III of the complaint alleging breach of contract.

Our disposition makes it unnecessary to reach Khawaja's second and fourth issues. Khawaja's second issue relates to the trial court's failure to permit her to amend her complaint to add any averments necessary to make her contract claim viable. Because we have held that the contract claim as originally pleaded was viable and should have been permitted to proceed, that issue is moot.

Khawaja's fourth issue relates to the trial court's discussion of its professed error in considering the parties affidavits in connection with the preliminary objections. The trial court was correct that it should have resolved the preliminary objections without reference to the affidavits. **See Kilmer v. Sposito**, --- A.3d ----, 2016 PA Super 141, at *2 (Pa. Super. 2016). Consideration of materials extraneous to the complaint would have been appropriate on a motion for summary judgment, but the trial court was not presented with a summary judgment motion here. Although the trial court commented about deficiencies in in the proof provided by the affidavits, **see** Trial Court Opinion, 3/16/16, at 4, the court did not base its dismissal of the action on any of the extraneous information provided by the parties. As we now reverse the dismissal on other grounds, the trial court's consideration of the affidavits provides no basis for any appellate action.

**Unjust Enrichment**

Khawaja's remaining issue is whether the trial court erred in dismissing her count alleging unjust enrichment. The trial court recognized that a plaintiff may plead alternative theories of recovery in a complaint, but it held that, because Khawaja acknowledged the undisputed fact that she entered into a written Agreement with RE/MAX, there could be no basis for an unjust enrichment claim. We agree. A cause of action for unjust enrichment may arise only when there is no express contract between the parties. *Villoresi,* 856 A.2d at 84. Here, in light of the written Agreement, Khawaja's claim of unjust enrichment cannot stand.

Although Khawaja contends that the trial court misapplied this rule of law, she presents no authority to support her assertion. A claim sounding in breach of contract may be pleaded alternatively with a claim of unjust enrichment if the claims are raised in separate counts of a complaint. *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. 2009). However, the fact remains that "[a] cause of action for unjust enrichment arises only when a transaction is not subject to a written or express contract," *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 669 (Pa. Super. 2007). Khawaja argues that the trial court's rejection of her claim based on the Agreement meant that her unjust enrichment claim should have been permitted to proceed. Khawaja's Brief at 22-23. But because we have reversed the dismissal of Khawaja's contract claim,

this argument no longer has any force. Khawaja's complaint alleged unjust enrichment in her second count, which incorporated by reference the facts pled in Count I, her breach of contract count. **See** Compl. at 6. Her unjust enrichment count thus averred the existence and terms of the signed Agreement. Because a claim for unjust enrichment cannot stand when there is an express contract and because Khawaja's allegations in this regard are based on the terms of such a contract, we affirm the trial court's dismissal of Khawaja's unjust enrichment claim.

In sum, we reverse the trial court's dismissal of Counts I and III of Khawaja's complaint, alleging breach of contract; reinstate those claims; and remand for further proceedings with respect to them. We affirm the trial court's dismissal of Count II of the complaint, alleging unjust enrichment.

Case remanded. Panel jurisdiction relinquished.

Judge Bowes joins the opinion.

Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2016