J-S30005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ARTHUR & CYNTHIA LINDSAY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL & DEANNA STARE | : | |
| | : | |
| Appellants | : | No. 1685 MDA 2023 |

Appeal from the Order Entered November 15, 2023
In the Court of Common Pleas of Perry County
Civil Division at No(s):  CV-2022-845

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:              **FILED: OCTOBER 25, 2024**

Michael Stare ("Stare" or "Tenant") appeals from the order granting summary judgment in favor of Arthur and Cynthia Lindsay ("the Lindsays" or "Landlord(s)"). After careful review, we affirm.

The Lindsays, along with their son, own the property located at 591 Cherry Road, Liverpool, PA ("the Property"). The Lindsays entered into a rent to own contract with Michael and Deanna Stare (now Deanna Brown) on October 1, 2018.[1] The contract provided an effective date of October 1, 2018, and a termination date of September 30, 2022. Lease payments for the term

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Deanna Stare was released from the proceedings on August 8, 2023, pursuant to a stipulation between the parties, as she and Michael Stare were divorced prior to the filing of the complaint. Any reference to "Stare" within this memorandum therefore only refers to Michael Stare.

of the contract were set at $1,000.00 due on or before the first day of each month. If the lease payment were not made by the fifth day of the month, a $100.00 late fee would be added to the due amount. Stare had the right under the contract to remodel or make structural improvements to the house located on the Property. However, the contract provided that "Tenant may not make any claim against Seller for improvements made by Tenant." The Lindsays, under the contract, had the right to enter the Property, subject to Stare's consent, to inspect the Property, provide any services, or to show the Property to prospective buyers, mortgagees, tenants, or workers. Finally, the contract provided Stare may choose to purchase the Property prior to expiration of the lease term provided that Stare was not in default of the contract.

Initially, it seems the parties proceeded under the contract as required. Stare made his monthly rent payments, albeit not always on time, until July 3, 2020. On that date, Stare only paid $970.00. After July 5, the Lindsays assessed the $100.00 late fee. Stare's payment history continued to deteriorate. At the time of termination of the contract on September 30, 2022, Stare owed the Lindsays $280.00. Stare did not move out of the Property after September 30, 2022, as he believed he was entitled to purchase the property.

The sour relationship between the parties culminated in the Lindsays filing a complaint for breach of contract and ejectment on November 3, 2022. By the time the complaint was filed, Stare owed the Lindsays $2,380.00. Stare

filed an answer and new matter, raising three counterclaims: breach of contract, unjust enrichment, and fraud in the inducement.

On September 11, 2023, the Lindsays filed a motion for summary judgment. Stare filed his response on September 28, 2023. The trial court heard argument on October 6, 2023.[2] On November 14, 2023, the trial court granted summary judgment in favor of the Lindsays as to all claims and counterclaims.

Specifically, the trial court found: (1) Stare repeatedly failed to make timely rent payments constituting a substantial breach of contract, and entered judgment in favor of the Lindsays in the amount of $10,480.00 for back rent; (2) for the Lindsays in their ejectment action and ordered Stare to vacate the Property; (3) the Lindsays did not breach the contract; (4) no basis for Stare to claim unjust enrichment; and (5) the circumstances did not rise to the level of fraud in the inducement. Stare filed a timely appeal and complied with the trial court's order to file a Rule 1925(b) statement.[3]

Stare first challenges the trial court's order granting summary judgment in favor of the Lindsays as to the Lindsays' claim Stare breached the contract

---

[2] A copy of this transcript has not been provided to this Court.

[3] It appears that Stare's counsel did not receive a copy of the original order to file a Rule 1925(b) statement. Stare's counsel filed a request to file the Rule 1925(b) statement *nunc pro tunc* and the trial court granted the request on January 16, 2024.

by failing to pay his rent on time.[4] Specifically, Stare argues he was not in breach, or "default," of the contract. *See* Appellant's Brief, at 13. Stare asserts the contract does not provide a default for late payments as the contract provides for a late fee if payment is not made on time. *See id.* at 15-16. Stare believes the provision providing for late fees makes it "clear that the Parties did not intend for a late payment to be immediate grounds for termination of the agreement." *Id.* at 16.

Our scope and standard of review regarding the grant or denial of summary judgment is well-established:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Siciliano v. Mueller*, 149 A.3d 863, 864 (Pa. Super. 2016) (citation omitted).

A cause of action for breach of contract requires the party asserting the claim to establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant

---

[4] We note Stare has failed to comply with the dictates of Pa.R.A.P. 2119(a) as he has not divided his argument "into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). We therefore confine our review to Stare's three argument sections and not his statement of the questions involved.

- 4 -

damages." ***Gorski v. Smith***, 812 A.2d 683, 692 (Pa. Super. 2002) (citation omitted). Neither side disputes the existence of the contract, as it is a written contract signed by the Lindsays and Stare. We must, therefore, interpret the language of the contract to determine if Stare breached the contract.

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

***EMC Mortgage, LLC v. Biddle***, 114 A.3d 1057, 1068 (Pa. Super. 2015) (citation omitted). Notably, we cannot look outside of the written contract unless we find the written contract ambiguous. ***See Khawaja v. RE/MAX Central***, 151 A.3d 626, 631 (Pa. Super. 2016). Finally, "[w]e interpret provisions of a contract in light of the context in which they appear." ***Id.*** at 632 (citation omitted).

The portions of the contract relevant to Stare's first claim include:

> **LEASE PAYMENTS.** Tenant shall pay to Landlord monthly installments of $1,000.00 per month, payable in advance on the first (1st) day of each month. Lease payments shall be made to Landlord at 598 Cherry Rd, Liverpool, Pennsylvania 17045, which location may be changed, in writing by Landlord, with a minimum of seven (7) days advanced notice to Tenant.

> \*\*\*

**DEFAULTS.** Tenant shall be in default of this Lease if Tenant fails to fulfill any lease obligation or term by which Tenant is bound. Subject to any governing provision of law to the contrary, if Tenant fails to cure any financial obligation with 5 days (or any other obligation within 10 days) after written notice of such default is provided by Landlord to Tenant, Landlord may elect to cure such default and the cost of such action shall be added to Tenant's financial obligations under this Lease.

**LATE PAYMENTS.** For any payment that is not paid within five (5) days after its due date, Tenant shall pay a late fee of $100.00, or as otherwise provided by applicable law.

\*\*\*

**OPTION TO PURCHASE.** Tenant, upon satisfactory performance of this Lease, shall have the option to purchase the real property described herein for a purchase price of $158,000.00, provided that the Tenant timely executes the option to purchase and is not in default of the Lease Agreement. Thereafter, each of the parties shall promptly execute any and all further instructions or other documents including a Sale Agreement which may be reasonably required for purchase of the real property. The Landlord shall credit towards the purchase price at closing the sum of $1,000.00 from each monthly lease payment that the Tenant timely made, plus any other payments made over and above the $1,000.00 monthly payment, not including any late fees paid, if applicable.

\*\*\*

**REMEDIES UPON DEFAULT.** If Tenant defaults under this Option to Purchase Agreement or the Lease Agreement, then in addition to any other remedies available to Landlord in accordance with Pennsylvania law, Landlord may terminate this Option to Purchase by giving written notice of the termination. If terminated, the Tenant shall lose entitlement to any refund of rent or option consideration. For this Option to Purchase Agreement to be enforceable and effective, Tenant must comply with all terms and conditions of the Lease Agreement.

Plaintiff's Motion for Summary Judgment, 9/11/23, at Exhibit A.

The contract is clear and unambiguous. Tenant, Stare, must pay $1,000.00 per month prior to the 1st of the month. A default occurs if Tenant does not perform any of the obligations required under the lease, including failure to pay monthly rent on time. If Landlord, the Lindsays, choose to provide written notice of default, Tenant has an option to cure the default. If Tenant is in default, he may not exercise his option to purchase the property. Finally, if Tenant defaults, Landlord has the choice to terminate the option to purchase.

Stare argues the contract does not provide the Lindsays the ability to terminate the option to purchase solely for late payments of rent because there is a provision providing for late fees if Stare fails to pay his rent by the 5th of the month. **See** Appellant's Brief, at 15. We disagree.

"[I]n determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect. Thus, we will not interpret one provision of a contract in a manner which results in another portion being annulled." **LJL Transp., Inc. v. Pilot Air Freight Corp.**, 962 A.2d 639, 647-48 (Pa. 2009) (citations omitted).

If we were to find failure to pay timely rent was not a default, it would nullify the provisions defining defaults ("Tenant shall be in default of this Lease if Tenant fails to fulfill any lease obligation or term by which Tenant is bound"), the terms to exercise the option to purchase ("Tenant … shall have the option to purchase the real property … provided that the Tenant … is not in default

of the Lease Agreement"), and the remedies available to the Lindsays upon default by Stare ("If Tenant defaults under this Option to Purchase Agreement or the Lease Agreement, then in addition to any other remedies available to Landlord in accordance with Pennsylvania law, Landlord may terminate this Option to Purchase by giving written notice of the termination"). Moreover, defining failure to pay as a default does not annul the duty of the Tenant to pay late fees if he does not pay his rent by the 5th of the month. These provisions can be read in harmony.

Furthermore, the provision defining default provides the Lindsays, as Landlords, may allow Stare to cure the default if they choose to provide written notice. No where in the contract does it provide that the Lindsays must give Stare an opportunity to cure his default. It only provides that if the Lindsays choose to provide written notice to Stare of his default, Stare has the option to cure his default.

Stare argues "the Parties did not intend for a late payment to be immediate grounds for termination of the agreement." Appellant's Brief, at 16. Stare continues by noting our Supreme Court in *LJL* held immediate termination may only occur "when there is a material breach of the contract so serious it goes directly to the heart and essence of the contract, rending the breach incurable." *Id.* at 19 (quoting *LJL*, 962 A.2d at 641). Stare's argument fails for two reasons.

First, the Court in **LJL** addressed a franchise agreement that included a specific and required cure option: "Pilot **shall** allow Franchisee an opportunity to cure a default within ninety (90) days of receipt of written notice of a particular default." **LJL**, 962 A.2d at 643 (emphasis added). A similar provision was not included within the contract between the Lindsays and Stare. Stare asserts the following language creates a mandatory cure provision:

> Subject to any governing provision of law to the contrary, if Tenant fails to cure any financial obligation with 5 days (or any other obligation within 10 days) after written notice of such default is provided by Landlord to Tenant, Landlord may elect to cure such default and the cost of such action shall be added to Tenant's financial obligations under this Lease.

Appellant's Brief, at 17. This provision is strikingly different than the provision in **LJL**. At most, this provides Stare an option to cure his default if Landlord chooses to provide written notice of the default. It does not provide Landlord **shall** allow Tenant to cure any default. **LJL** is clearly distinguishable on this basis.

Second, Stare seems to assert the Lindsays "immediately" terminated the option to purchase even though Stare admits he began making late payments in July of 2020. **Cf.** Appellant's Brief, at 16-17 (noting Stare fell behind on his payments in July of 2020); 19 (discussing immediate termination of the agreement under **LJL**). The Lindsays waited nearly two years before providing Stare notice of termination of the option to purchase. Stare continued to be behind on his payments during these two years. **LJL** is therefore distinguishable, and Stare's first issue does not entitle him to relief

as he admits to not paying his rent by the 1st of the month for many months, a clear default under the terms of the contract.

Stare's next two issues involve his counterclaims. We address them together. Stare asserts the trial court erred in granting the Lindsays summary judgment on his counterclaims for fraud in the inducement and unjust enrichment.

While the same standard and scope of review applies to the grant of summary judgment on Stare's counterclaims, it is important to note Stare had an obligation to present evidence to support his counterclaims even though he was the non-moving party. *See Shellenberger v. Kreider Farms*, 288 A.3d 898, 905 (Pa. Super. 2023).

> Where the non-moving party bears the burden of proof on an issue, he may not rely on his pleadings or answers in order to survive summary judgment. Further, failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.
>
> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Id.* at 905-06 (citations and quotation marks omitted).

Fraud in the inducement requires the following elements be proven:

- 10 -

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. 2005) (citations omitted).

Stare presented no evidence, other than his averments in his answer and response to the Lindsays' motion for summary judgment, of the representation, the falsity of the representation, the intent of the Lindsays, his justifiable reliance, and his resulting injury. Because Stare "fail[ed] … to adduce sufficient evidence on an issue … on which he bears the burden of proof" the trial court's grant of summary judgment as to fraud in the inducement was correct.

Finally, "[a] cause of action for unjust enrichment may arise only when there is no express contract between the parties." *Khawaja*, 151 A.3d at 633 (citation omitted). The parties here had an express, written contract. Therefore, Stare may not claim unjust enrichment as that doctrine is inapplicable to a written contractual dispute.

In summary, we affirm the order granting summary judgment as Stare breached the contract by failing to pay his monthly rent on time resulting in him being behind on payments for nearly two years before the Lindsays provided notice of their intent to terminate the option to purchase. We further affirm the grant of summary judgment as to Stare's counterclaims for fraud

in the inducement and unjust enrichment as Stare did not present evidence to support his burden of proof on these claims.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/25/2024