# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| OUTBOX SYSTEMS, INC. d/b/a SIMPLUS, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. N21C-11-123 PRW CCLD |
| TRIMBLE INC., | ) ) | |
| Defendant. | ) | |

Submitted: May 5, 2022
Decided: August 24, 2022

*Upon Defendant Trimble Inc.'s Motion to Dismiss Count II of the Complaint,*
**GRANTED**.

## <u>MEMORANDUM OPINION AND ORDER</u>

Patricia L. Enerio, Esquire, Jamie Brown, Esquire, HEYMAN ENERIO GATTUSO & HIRZEL, Wilmington, Delaware; Gerry Silver, Esquire (*argued*), SULLIVAN & WORCESTER LLP, New York, New York, *Attorneys for Plaintiff Outbox Systems, Inc. d/b/a Simplus*.

Steven T. Margolin, Esquire, Samuel L. Moultrie, Esquire, GREENBERG TRAURIG, LLP, Wilmington, Delaware, *Attorneys for Defendant Trimble Inc*.

**WALLACE, J.**

The Court here resolves Defendant Trimble Inc.'s Motion to Dismiss Count II of the Complaint alleging that Outbox Systems, Inc. d/b/a Simplus failed to state a claim for account stated and that Count II is impermissibly duplicative of Count I. For the reasons set forth below, that motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from Defendant Trimble Inc.'s alleged breach of certain technology consulting agreements between itself and Plaintiff Outbox Systems, Inc. d/b/a/ Simplus ("Simplus").[1]

Simplus is a corporation organized under the laws of Delaware, with its principal place of business in Salt Lake City, Utah.[2] Trimble is also a corporation organized under the laws of Delaware, but its principal place of business is Sunnyvale, California.[3] Trimble provides software and hardware services to customers in industries such as agriculture, construction, geospatial and transportation, and logistics.[4]

On April 1, 2020, the parties executed a Master Consulting Services Agreement ("MSA") under which Simplus was to provide technology consulting

---

[1] Complaint ¶ 1, Nov. 12, 2021 (D.I. 1) ("Compl.").

[2] *Id.* ¶ 2.

[3] *Id.* ¶ 3.

[4] *Id.* ¶ 4.

services to Trimble.[5] The MSA provided that services would be performed pursuant to statements of work ("SOWs") entered into by the parties.[6] The MSA stated that "[u]nless otherwise expressly specified in a [SOW], (i) all payments are due in U.S. Dollars within 45 days of Trimble's receipt of an undisputed invoice."[7]

The parties entered into three separate SOWs between November 9 and December 14, 2020.[8] Each SOW provided for billing by Simplus on a "time and materials" basis using the hourly rates set forth therein.[9]

Simplus says it performed its obligations in accordance with the MSA and SOWs and invoiced Trimble as it completed work.[10] But Trimble allegedly failed to perform its duties under the same.[11] For instance, Trimble was obligated to provide Simplus with certain "Product Bundles" at the outset of a project.[12] These Product Bundles relate to particular offerings and pricing Trimble would be making available to its customers for its building, construction, and architectural product

---

[5]   *Id.* ¶¶ 6, 8.

[6]   *Id.* ¶ 8.

[7]   *Id.*, Ex. A, MSA at § 5.1.

[8]   Compl. ¶¶ 9-10. Specifically, (1) the "Illuminate SOW", where Simplus was to provide assistance and support to Trimble relating to business transformation efforts; (2) the "System Integration" SOW, where Simplus was to provide services to Trimble relating to integrating Salesforce with Trimble's other existing software and databases; and (3) the "Data Migration" SOW, where Simplus was to move data over from Trimble's old systems to its new systems. *Id.*

[9]   *Id.* ¶ 11.

[10]  *Id.* ¶¶ 12, 30-31.

[11]  *Id.* ¶ 20.

[12]  *Id.* ¶ 13.

lines.[13]  Without these Product Bundles, Simplus would be unable to complete a design and build as requested; that meant Simplus's builds couldn't then be fully integrated.[14]

Nevertheless, Simplus delivered its builds to Trimble using what information Trimble did provide, and these builds were at least "functional from a business perspective."[15]  Thereafter, Trimble decided to halt the project and, in August 2021, instructed Simplus to stop its efforts because the work was incomplete.[16]  Simplus alleges in its Complaint that the work wasn't complete because Trimble failed to perform its contractual obligations.[17]

Simplus brought this action alleging Trimble's failure to pay invoices that Simplus sent for the work it had performed.[18]  According to Simplus, Trimble never expressly disputed any of Simplus's invoices.[19]  Simplus sent a total of seventeen invoices from June 16, 2021, to August 19, 2021.  They added up to $2,132,348.98.[20]

---

[13]  *Id.* ¶ 14. This included various software modules and combinations of such modules, software maintenance offerings, training offerings, and professional services offerings, along with custom pricing. *Id.*

[14]  *Id.* ¶ 23.

[15]  *Id.* ¶ 27.

[16]  *Id.* ¶¶ 28-29.

[17]  *Id.* ¶ 29.

[18]  *Id.* ¶ 30.

[19]  *Id.* ¶ 31.

[20]  *Id.* ¶ 32.

To date, Trimble hasn't paid even one of these invoices.[21]  Simplus drew claims in in its complaint for: (i) breach of contract; (ii) account stated; and, in the alternative, (iii) unjust enrichment.[22]

The first claim alleges Trimble breached the MSA and SOWs by failing to pay Simplus for its services invoiced thereunder.[23]  The second claim reads (i) that "[a]n account existed as between Simplus and Trimble"; (ii) that Trimble "failed to pay Simplus the total amount due of $2,132,348.98 on outstanding invoices"; and (iii) that "Trimble never made timely objection to the particular invoices as billed and/or account stated, never disputed the amount of any invoice, and did not timely dispute its requirement to pay any particular invoice."[24]  Finally, the unjust enrichment claim alleges that Trimble's failure to pay for Simplus's services has conferred an unearned and undeserved benefit upon Trimble, which it would be against equity and good conscience for Trimble to retain.[25]

Trimble moved to strike Simplus's demand for an affidavit of defense under 10 *Del. C.* § 3901 and to dismiss Count II of the Complaint.[26]  Simplus agreed to

---

[21]   *Id.*

[22]   *See generally* Compl.

[23]   *Id.* ¶ 38.

[24]   *Id.* ¶¶ 41-44.

[25]   *Id.* ¶ 46.

[26]   Def. Trimble's Mot. to Strike and Mot. to Dismiss, Jan. 7, 2022 (D.I. 11) ("Trimble's Motion").

withdraw its demand for an affidavit of defense[27]—mooting that issue and leaving the viability of Count II as the only point of dispute. At bottom, Trimble's Motion poses two questions: (i) whether Simplus pleaded facts sufficient to support an account stated claim; and (ii) whether the account stated claim is impermissibly duplicative of Simplus's breach-of-contract claim.

## II. STANDARD OF REVIEW

A party may move to dismiss under this Court's Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[28] In resolving a 12(b)(6) motion, the Court (1) accepts as true all well-pleaded factual allegations in the complaint;[29] (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable factual inferences in favor of the non-movant; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[30] So dismissal is inappropriate unless "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[31]

---

[27] Pl. Simplus's Answering Br. in Opp'n to Def.'s Mot. at 1, Jan. 28, 2022 (D.I. 17) ("Simplus's Answering Br.").

[28] Del. Super. Ct. Civ. R. 12(b)(6).

[29] But the Court need not adopt "every strained interpretation of the allegations the plaintiff proposes." *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

[30] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[31] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. Ct. 2021) (internal quotation marks omitted); *see Cent. Mortg.*, 27 A.3d at 537 n.13 ("Our governing 'conceivability' standard is more akin to 'possibility . . . .'").

"Generally, matters outside the pleadings should not be considered in ruling on a motion to dismiss."[32]  But the Court might consider documents or exhibits outside the pleadings when they are "integral to a . . . claim and incorporated into the complaint."[33]

## III.  PARTIES' CONTENTIONS

According to Trimble, Simplus has failed to adequately plead even one necessary element of an account stated claim.[34]  Trimble says that the Complaint contains no allegations of an agreement constituting an "account" being created *after* any debt was incurred.[35]  Instead, says Trimble, the Complaint merely alleges that the parties entered into a written agreement and that invoices were subsequently sent to Trimble for services allegedly rendered.[36]  It further argues that there are no factual allegations that Trimble stated or admitted to owing any specific sum to Simplus on the reputed account, much less that Trimble made this admission "after the original account or debt was created."[37]  Finally, Trimble insists the account

---

[32]  *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 68 (Del. 1995).

[33]  *Windsor I, LLC v. CWCap. Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020); *see also Malpiede*, 780 A.2d at 1083 ("[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negated the claim as a matter of law.").

[34]  Trimble's Motion at 10-12.

[35]  *Id.* at 11.

[36]  *Id.*

[37]  *Id.* at 12.

stated claim is "entirely duplicative of [Simplus's] breach of contract claim."[38]

In Simplus's view, Count II should not be dismissed because it has pleaded factual allegations sufficient for an account stated claim.[39] Specifically, it contends that the invoices sent to Trimble constituted a then-existing debt, and that Trimble failed to object to the invoices within a reasonable time.[40] These facts are sufficient to plead that Trimble assented to owing a specific sum or that it agreed to a past debt, says Simplus, because "allegations of a 'failure to object to an invoice within a reasonable time can constitute the assent necessary for estoppel by account stated.'"[41] In other words, Simplus urges it does not need to plead that Trimble expressly assented or admitted to owing a certain amount.[42]

During argument, the Court questioned the practical effect of the account stated claim in light of the breach-of-contract claim.[43] Simplus explained the claims are not redundant because "you don't have to prove all the elements of a breach of contract on an account-stated claim."[44] In other words, under its account stated

---

[38] Def. Trimble's Reply Br. in Further Supp. of its Mot. to Strike and Mot. to Dismiss at 6, Feb. 8, 2022 (D.I. 18) ("Trimble's Reply Br.").

[39] Simplus's Answering Br. at 4.

[40] *Id.* at 4-5.

[41] Simplus's Answering Br. at 5 (quoting *CP Printing Ltd. v. Glitterati Inc.*, 2021 WL 212690, at *1 (D. Del. Jan. 21, 2021)).

[42] *Id.*

[43] Hearing Tr. (Feb. 24, 2022) at 17 (D.I. 25).

[44] *Id.* at 20.

theory, Simplus contends it does not have to show performance, breach, or "get into every nitty-gritty" of the complicated MSA details at issue in this case.[45]

## IV. DISCUSSION

For any number of reasons, Simplus can't—from these parties' written agreements and the facts alleged—formulate an account stated claim that can stand under Delaware law. First, Simplus fails to state a claim for account stated because there seems to have been no recognizable "account" formed and there is nothing in Simplus's pleading that could reasonably support a read that Trimble stated or admitted to owing any specific sum on an "account"—if one had existed. Second, the account stated claim, in these circumstances, impermissibly duplicates Simplus's breach-of-contract claim both as to the substance of the alleged wrong complained-of and the wholly identical damages sought. Third—and perhaps the Court should have led with this—the account stated claim attempts to circumvent the parties' contractual arrangements in a way antithetical to bedrock Delaware contract law. Plainly, the account stated claim can't survive.

### A. HISTORY OF ACCOUNT STATED CLAIMS.

"Account" is a common law form of action, defined as an "unsettled claim or demand by one person against another based upon a transaction creating a debt and creditor relation between the parties which is usually but not necessarily represented

---

[45] *Id.*

-9-

by an *ex parte* record kept by one or both of them."[46]  An account stated claim is understood as a type of contract claim.[47]  As one court explains, "an action for 'account stated' still sounds in contract just like an action for quasi-contract or unjust enrichment, and is no more 'independent' from contract actions generally than a negligence action is independent of tort actions generally."[48]  In other words, an account stated is "just a variety of contract."[49]

To make a *prima facie* account stated claim, Delaware law requires a plaintiff to allege the following: "(1) an account existed between the parties; (2) the defendant stated or admitted to owing a specific sum on the account to the plaintiff; and (3) the defendant made this admission after the original account or debt was created."[50]  Beyond that, however, Delaware jurisprudence is limited in this space.  As such, a general overview of account stated claims is helpful.

### 1.  How Relevant Treatises Explain Account Stated Claims.

*Williston on Contracts* explains that "[a]n 'account stated' is a promise by the

---

[46]  *Citibank (S.D.) N.A. v. Santiago*, 2012 WL 592873, at 2 (Del. Com. Pl. Feb. 23, 2012) (citing *Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 846 (Del. Super. Ct. 1980)).

[47]  *Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 465 (E.D. Pa. 2008); *see also Cosy Goose Hellas v. Cosy Goose USA Ltd.*, 581 F.Supp.2d 606, 614 (S.D.N.Y. 2008) (noting that claims for account stated, goods had and received, and unjust enrichment sound in contract or quasi-contract).

[48]  *Richburg*, 247 F.R.D. at 465.

[49]  *Id.*

[50]  *Sparebank 1 SR-Bank ASA v. Wilhelm Maass GMBH*, 2019 WL 6033950, at *6 (Del. Super. Ct. Nov. 5, 2019) (quoting *Citibank (S.D.) N.A.*, 2012 WL 592873, at *2 (citing *Chrysler Corp.*, 426 A.2d at 849 (internal quotations omitted))).

debtor to pay a stated sum of money which the parties have agreed upon as the amount due. . . . [An account stated] may be implied from the retention of an account rendered for an unreasonable period of time without objection and from the surrounding circumstances."[51] But, a promise "to pay a sum of money based on an antecedent transaction will not by itself create an account stated, even though the promise is supported by consideration and is binding; rather there must be an antecedent debt to which the promise relates and which the promise 'states' or 'restates.'"[52]

According to *Williston,* the "essential elements of an account stated are (1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; and (3) a promise by the debtor, express or implied, to pay the amount due."[53] "The basic requirement of an account stated is that an exact and definite balance must be struck as to which both the creditor and debtor assent."[54]

So, as a general principle, unequivocal assent between the parties is paramount in establishing an account stated claim. Per the *Restatement (Second) of*

---

[51] 29 *Williston on Contracts* § 73:55 (4th ed. 2021).

[52] *Id.*

[53] *Id.* § 73:56

[54] *Id.*

*Contracts*, "assent may be inferred from [] conduct . . . [and] retention of the statement for an unreasonably long time is a manifestation of [] assent. How long a time is unreasonable is a question of fact to be answered in light of all the circumstances."[55]

And, *Woolley on Delaware Practice* tells us:

An account is an agreement by both parties that all items are true. It changes the character of the original debt and is a *new* contract or undertaking, . . . No recovery can be had under an account stated, unless there is evidence that there was an account stated between the parties, in which the person said to be charged, stated, or admitted a certain sum to be due and owing from him to the other. In the absence of such proof no recovery can be had under the count for account stated.[56]

## 2. Delaware Courts' Treatment of Account Stated Claims.

There are few Delaware cases that discuss account stated claims, much less recent Delaware cases.

In 1926, this Court spoke of an account stated claim in *Baliezewski v. Putzcus*.[57] In that case, the plaintiff brought an action before a Justice of the Peace, where the claim was for the sale and delivery of goods.[58] The defendant appealed the entry of judgment to this Court, and the plaintiff framed his claim here as one of

---

[55]  *Restatement (Second) of Contracts* § 282, cmt. b (1981).

[56]  2 *Woolley on Delaware Practice* § 1460 (1906) (emphasis added).

[57]  *Baliezewski v. Putzcus*, 132 A. 217 (Del. Super. Ct. 1926).

[58]  *Id.* at 218.

"account stated."[59] The defendant sought to strike the claim because it set out a different cause of action than that tried before the Justice of the Peace.[60] Citing earlier Delaware cases, the *Beliezewski* court noted "[a]n account stated is an agreement, by both parties, that all the items are true. It changes the character of the original debt, and is a new contract or undertaking."[61] Moreover, "[a]n account stated alters the character of the original indebtedness, and is itself in the nature of a new promise or undertaking, and raises a new cause of action between the parties."[62] Relying on these principles, the Court held that the action before the Justice of the Peace was a "different cause of action" than the account stated claim raised by the plaintiff on appeal.[63] In other words, this Court's actual holding was that the account stated claim argued on appeal was an entirely different claim than the breach-of-contract count championed below.[64] And so, the Court had little reason to—and did not—definitively resolve what might be needed to satisfy the elements of an account stated claim under Delaware law.

Much more recently, in 2019, this Court was presented with a motion to dismiss an account stated claim in *Sparebank 1 SR-Bank ASA v. Wilhelm Maass*

---

[59]    *Id.*

[60]    *Id.*

[61]    *Id.* (internal quotations omitted).

[62]    *Id.* at 219 (internal quotations omitted).

[63]    *Id.*

[64]    *See id.* at 219.

*GMBH*.[65] The defendant ordered, received, and failed to pay for ten shipments of custom steel components from a manufacturer that later filed for bankruptcy. The *Sparebank* plaintiff purchased that manufacturer's claims against the defendant from the company's bankruptcy estate.[66] The arrangement between the defendant customer and manufacturer was relatively straightforward. The defendant would place orders for steel products and the manufacturer would produce and ship the ordered products. The manufacturer then would send the defendant invoices.[67] The defendant allegedly never paid the invoices and claimed it had never placed the orders at issue.[68]

The defendant argued the plaintiff failed to plead facts to support an account stated claim because the complaint was devoid of facts that the defendant stated or admitted to owing a specific sum on the account to the plaintiff.[69] The plaintiff answered that discovery would reveal the defendant acknowledged at some point an obligation to pay a past debt.[70] The Court held that the complaint contained no allegations that the defendant stated or admitted to owing a specific sum on the

---

[65]   *Sparebank 1 SR-Bank ASA*, 2019 WL 6033950, at *6-7.

[66]   *Id.* at *1.

[67]   *Id.*

[68]   *Id.*

[69]   *Id.* at *6.

[70]   *Id.*

account, and dismissed the claim.[71]

In *Citibank (South Dakota) N.A. v. Santiago*, the Court of Common Pleas was also resolving a motion to dismiss an account stated claim.[72] There, the plaintiff brought a number of claims against the defendant that centered around non-payment of credit card statements.[73] The complaint sufficiently alleged a breach-of-contract claim; namely, (1) a contract existed between the parties for a specific amount, (2) defendant breached by failing to pay the amounts due, and (3) as a result, plaintiff suffered damages.[74] The court, on deciding the account stated claim, noted the plaintiff merely alleged the defendant under "the account" was required to make prompt and regular payments.[75] The court granted the motion to dismiss because the complaint failed to plead facts that the defendant stated or admitted to owing a specific sum on the account to the plaintiff.[76]

Finally, the United States District Court for the District of Delaware discussed an account stated claim in *CP Printing Ltd. v. Glitterati Inc.*[77] There, the plaintiff moved for summary judgment on breach-of-contract and related claims—none of

---

[71]   *Id.* at *7.

[72]   *Citibank (S.D.) N.A.*, 2012 WL 592873, at *1.

[73]   *See id.*

[74]   *Id.* at *2.

[75]   *Id.*

[76]   *Id.*

[77]   *CP Printing Ltd.*, 2021 WL 212690.

which were an account stated claim.[78]  The plaintiff claimed to have sold defendant approximately $228,202.24 in printed books.[79]  But the defendant paid the balance only in part, leaving a substantial amount outstanding.[80]  The plaintiff argued the "invoices delivered to [defendant] . . . operate[d] as account stated [sic]."[81]  In a brief discussion citing just a general principle from *Williston*—not Delaware law—the federal court noted that "[w]hile the failure to object to an invoice within a reasonable time can constitute the assent necessary for estoppel by account stated, what constitutes a 'reasonable time for the purposes of this rule is generally a question for the jury.'"[82]  "As a result, a debtor's 'silence with respect to . . . invoices received is not so conclusive as to require a directed verdict against it.'"[83]  Accordingly, the district court denied the plaintiff's motion for summary judgment.[84]

In sum, Delaware state courts have rarely dealt with account stated claims, and when they have, the factual recitations were often not very detailed.[85]  But what

---

[78]  *See id.* at *1.

[79]  *Id.*

[80]  *Id.*

[81]  *Id.*

[82]  *Id.* But, even there, the federal court recognized a still further limitation of that non-Delaware-law-based principle.  *See id.* ("An account stated can estop a party from disputing an amount owed, but only if 'the creditor and the debtor assent' to an 'exact and definite balance.'").

[83]  *Id.*

[84]  *See id.* at *2.

[85]  So too with the one Delaware federal district court case—*CP Printing*—Simplus leans on heavily.  Simplus's Answering Br. at 5 (quoting *CP Printing Ltd.*, 2021 WL 212690, at *1).

the Court can draw from these cases is that a plaintiff must plead facts that the defendant stated or admitted to owing a specific sum on an account to plaintiff. Further, the common law doctrine and various treatises make clear that the defendant must make such admission *after* the original account or debt was created. But no court, applying Delaware law, has expressed with clarity: (1) whether the "account" can be culled from a contractual relationship like the one here?; and (2) if so, to satisfy the elements of a Delaware account stated claim, whether such admission must be express or might be implied? As to the first question, it cannot. As to the second, silence is not enough.

## B. DISMISSAL OF SIMPLUS'S ACCOUNT STATED CLAIM IS WARRANTED.

### 1. Simplus Failed to Plead Facts Sufficient to Support a Delaware Account Stated Claim.

The basic elements of an account stated claim are the same across jurisdictions, but courts differ on certain specifics, including the nature of the assent necessary to plead an account stated claim. To reiterate, Delaware state courts have defined the requirements of an account stated as follows: "(1) an account existed between the parties; (2) the defendant stated or admitted to owing a specific sum on the account to the plaintiff; and (3) the defendant made this admission after the original account or debt was created."[86] Some other courts suggest that express

---

[86] *Sparebank 1 SR-Bank ASA*, 2019 WL 6033950, at \*6 (quoting *Citibank (S.D.) N.A.*, 2012 WL 592873, at \*2 (citing *Chrysler Corp.*, 426 A.2d at 849 (internal quotations omitted))).

assent is not always necessary—namely, "the failure to object to an invoice within a reasonable time can constitute the assent necessary for estoppel by account stated."[87]

Simplus insists Trimble's failure to object to its invoices within a reasonable time is "sufficient to plead assent or agreement to a past debt, and therefore Trimble's motion to dismiss the account stated claim should be denied."[88]

Trimble counters that Delaware authority is devoid of this implied assent principle for account stated claims, and that Simplus's reliance on *CP Printing*, a federal district court case, is misplaced because that case did not involve an actual account stated claim[89]—or, it appears, application of Delaware law.

Just so. Delaware case law does not support allowance of Simplus's implied assent postulate at all, much less in these circumstances.

The only Delaware case that suggests silent assent might be sufficient for an account stated claim is *Baliezewski v. Putzcus*. In that case, the Court noted that "[a]n account stated . . . exists where the accounts between two parties have been examined and a balance is found in favor of one of the parties, and the party against whom the balance is found either expressly or *impliedly* agreed to pay such balance found to be due."[90] But *Baliezewski*'s thumbnail sketch of an account stated claim

---

[87]  *CP Printing Ltd.*, 2021 WL 212690, at *1.

[88]  Simplus's Answering Br. at 5.

[89]  Trimble's Reply Br. at 4-5; *see also CP Printing Ltd.*, 2021 WL 212690, at *1.

[90]  *Baliezewski*, 132 A. at 218 (emphasis added).

seems a bit too hastily and ill-drawn. Of particular note, *Baliezewski* cites to no authority to support its implied-agreement proposition. Nor did *Baliezewski* actually adjudicate the merits of an account stated claim. So, it is unsurprising that not one subsequent Delaware state court case addressing account stated claims cites *Baliezewski*. So the Court looks to those more recent Delaware cases that have adjudicated account stated claims.

In *Sparebank 1 SR-Bank ASA v. Wilhelm Maass GBMH*, where unpaid invoices were at issue,[91] the plaintiff insisted "that an account existed between the parties based on an express or implied agreement that [defendant] would pay for [specified orders of steel]."[92] This Court explained dismissal was appropriate for the account stated claim because the complaint "makes no allegations that [defendant] stated or admitted to owing a specific sum," and dismissed the account stated claim.[93] The same occurred in *Citibank (South Dakota) N.A. v. Santiago*, where the Court of Common Pleas dismissed an account stated claim because the complaint contained no factual allegations that the defendant stated or admitted to owing a specific sum.[94]

In *Chrysler Corp. v. Airtemp Corp.*, this Court, when discussing an account

---

[91]  *Sparebank-1 SR-Bank ASA*, 2019 WL 6033950, at *1.

[92]  *Id.* at *7.

[93]  *Id.*

[94]  *Citibank (S.D) N.A.*, 2012 WL 592873, at *2.

stated claim, turned to *Woolley*: "No recovery can be had under an account stated, unless there was an account agreed upon between the parties, by which the person said to be charged, *stated, or admitted* a certain sum to be due and owing."[95] *Woolley*, an authority oft-cited when explaining such arcana of Delaware law, says nothing to suggest that silent or implied assent is sufficient for an account stated claim.[96]

Simplus turns to one federal district court case, *CP Printing*, that does suggest that in certain commercial contexts the failure to object to invoices within a reasonable time might constitute the assent necessary for estoppel by account stated.[97] But, that case actually contained three different counts: breach-of-contract, quantum meruit, and unjust enrichment—not an account stated claim.[98] The account stated was addressed only because the plaintiff raised it in its briefing.[99] And the federal trial court's succinct fact-bereft order denying summary judgment says nothing of Delaware law.[100]

Those courts that do recognize implied assent as sufficient tend to clearly say

---

[95] *Chrysler Corp.*, 426 A.2d at 848 (quoting 2 *Woolley on Delaware Practice* § 1460 (emphasis added)).

[96] *See* 2 *Woolley on Delaware Practice* § 1460.

[97] *CP Printing Ltd.*, 2021 WL 212690, at *1.

[98] *See id.*

[99] *Id.*

[100] *See generally id.*

so when limning the elements of an account stated.[101] Yet, other than *Baliezewski*'s allusion to such, Delaware law is devoid of such language.

Why? Because Delaware law requires an express agreement to the incurred debt between the parties for an account stated claim to survive and prevail. In turn, to have any chance of withstanding a motion to dismiss in this Court, one bringing an account stated claim would have to establish, at the very least, that the purported account debtor expressly agreed to pay the certain sum at issue.[102] Failure to object to contract-borne invoices "within a reasonable time" isn't enough.

Here, Simplus relies wholly on the implied assent principle[103] and—on that failure alone—falls short in its pleading of facts sufficient for any viable account stated claim here. The Complaint contains no facts alleging Trimble expressly stated or admitted to owing a specific sum on an account, or that Trimble made such an admission after the original debt (*i.e.*, the invoices) was created.[104] Accordingly,

---

[101] *See, e.g., David Rovinsky LLC v. Peter Marco, LLC*, 2020 WL 5645792, at *11 (C.D. Cal. Sept. 21, 2020) ("To state a claim for account stated, a plaintiff must plead: '(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, *express or implied*, on the amount due . . .; [and] (3) a promise by the debtor, *express or implied*, to pay the amount due.'") (emphases added) (quoting *Zinn v. Fred R. Bright Co.*, 76 Cal. Rptr. 663, 665-66 (Cal. Ct. App. 1969)).

[102] *See* 2 *Woolley on Delaware Practice* § 1460 ("No recovery can be had under an account stated, unless there is evidence that there was an account stated between the parties, in which the person said to be charged, stated, or admitted a certain sum to be due and owing from him to the other.").

[103] *See* Simplus's Answering Br. at 4-8.

[104] *See generally* Compl. Simplus stated only that "Trimble never made timely objection to the particular invoices as billed and/or account stated, never disputed the amount of any invoice, and did not timely dispute its requirement to pay any particular invoice." *Id.* ¶ 43.

Simplus has failed to plead facts sufficient to support an account stated claim here, and Trimble's motion to dismiss for failure to state a claim must be granted for that reason. But even if the pleaded facts somehow aligned to a reasonably conceivable account stated claim, the Court still would be wary of allowing such to stand next to a well-pleaded breach-of-contract count.

## 2. The Account Stated Claim is Impermissibly Duplicative.

No doubt, Delaware's trial courts have shown growing antipathy toward both bootstrapped[105] and needlessly duplicative[106] claims in what are otherwise

---

[105] *See, e.g.*, *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *16 (Del. Super. Ct. Jan. 13, 2021) (quoting *Swipe Acquisition Corp. v. Krauss*, 2020 WL 5015863, at *11 (Del. Ch. Aug. 25, 2020)) ("[A] contracting party may not bootstrap a breach of contract claim into a fraud claim merely by adding [words of fraud] or alleging that the contracting parties never intended to perform."); *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *5 (Del. Super. Ct. Mar. 13, 2017) (quoting *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010)) (same).

[106] *See, e.g.*, *Lehman Brothers Holdings, Inc. v. Kee*, 268 A.3d 178, 184, 198 (Del. 2021) (affirming this Court's dismissal of a declaratory judgment claim because it was "completely duplicative" of the complaint's affirmative contract-based counts); *Intermec IP Corp v. TransCore, LP*, 2021 WL 3620435, at *17 (Del. Super. Ct. Aug. 16, 2021) (quoting *Envolve Pharmacy Sols., Inc. v. Rite Aid Headquarters Corp.*, 2021 WL 140919, at *10 (Del. Super. Ct. Jan. 15, 2021) ("Under Delaware law . . . '[i]f recovery is possible under the contract,' then the contract controls and a duplicative unjust enrichment claim will be dismissed . . .")); *Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC*, 2022 WL 34688, at *15 (Del. Ch. Jan. 4, 2022) ("The allegations supporting Count I's breach of contract claim are substantially duplicated in Count II's unjust enrichment claim, and both stem from the same underlying facts. Such duplicative claims cannot stand." (internal citations omitted)); *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 2021 WL 4344172, at *10 (Del. Super. Ct. Sept. 23, 2021) (finding an implied covenant claim duplicative of a breach-of-contract claim); *see also Murphy v. Pentwater Cap. Mgmt. LP*, 2019 WL 3545850, at *4 (Del. Super. Ct. July 24, 2019) (noting that "when there is an enforceable contract between the parties, quantum meruit recovery is inapplicable."); *Schuss v. Penfield Partners, L.P.*, 2008 WL 2433842, at *10 (Del. Ch. June 13, 2008) (citing *Gale v. Bershad*, 1998 WL 118022, at *5 (Del. Ch. Mar. 4, 1998)) (comparing the dismissal of a duplicative breach of fiduciary duty claim and a breach-of-contract claim in *Gale*, which claims were substantially identical and "superfluous," with a breach of fiduciary duty claim and breach-

straightforward breach-of-contract cases. Sure, there is some utility and real need for pleading in the alternative under the right circumstances—for instance, where the complaining party expresses some palpable doubt as to a written contract's validity or enforceability. Where so, that need should be easily discernable in the complaint. Where not, the Court might rightly dismiss as completely duplicative or otherwise needless a pendant claim in favor of the well-pleaded breach-of-contract count.[107] Doing so—as explained further below—keeps fidelity to Delaware's pro-contractarian ethos.

Trimble contends the account stated claim is "entirely duplicative" of Simplus's breach-of-contract claim.[108] It is.

Simplus grounds both its breach-of-contract claim and its account stated claim on Trimble's alleged breach of the MSA and SOWs for failure to pay invoices.[109] Put simply, both counts are based on precisely the same facts and focus precisely on the same alleged failure to pay invoices—which failure is expressly governed by the

---

of-contract claim in *Schuss*, which were not duplicative because, though the claims shared a common nucleus of operative facts, the claims each "depend[ed] on additional facts as well").

[107] *See e.g. Bakerman v. Sidney Frank Importing Co., Inc.*, 2008 WL 3927242, at \*18 (Del. Ch. Oct. 10, 2008) ("[C]laims of unjust enrichment may survive a motion to dismiss when the validity of the contract is in doubt or uncertain. When the complaint alleges an express, enforceable contract that controls the parties' relationship, however, a claim for unjust enrichment will be dismissed.").

[108] Trimble's Reply Br. at 6.

[109] *See generally* Compl.

MSA and SOWs.[110] And there is nothing in Trimble's pleadings that suggests any doubt as to the validity or enforceability of the express contract that controls its relationship with Simplus. So, the account stated claim is subject to dismissal as impermissibly duplicative of the breach-of-contract claim because the claims are based completely on the same facts.

Simplus also pleads the same damages for both counts. The breach-of-contract claim takes aim at the unpaid invoices. And citing just those, Simplus complains it "has suffered damages in an amount to be determined at trial, but believed to be not less than $2,132,348.98, plus interest and costs of collection."[111] The account stated claim also takes aim at the unpaid invoices—"Trimble failed to pay Simplus the total amount due of $2,132,348.98 on outstanding invoices."[112] And, as a result, says Simplus, it "has suffered damages in an amount to be determined at trial, but believed to be not less than $2,132,348.98, plus interest and costs of collection."[113]

---

[110] *See id.* ¶ 8 ("The MSA set forth the general terms by which Simplus would provide technology consulting services to Trimble, including pursuant to certain [SOWs]."); *Id.* ¶ 31 ("The SOWs provide for Simplus to send invoices to Trimble, and that Trimble is required to notify Simplus within forty-five days of any dispute (MSA § 5.1)."); *see also id.* ¶ 42 (stating as the basis for the account stated claim that "Trimble failed to pay Simplus the total amount due . . . on outstanding invoices"); *Id.* ¶ 38 (stating as a basis for the breach-of-contract claim that "Trimble breached the MSA and the SOWs by failing to pay Simplus [the amount due on the invoices], despite due demand").

[111] Compl. ¶ 39.

[112] *Id.* ¶ 42.

[113] *Id.* ¶ 44.

-24-

When as here such a pendant count does no more than reiterate the facts alleged[114] or damages sought[115] via the well-pleaded primary breach-of-contract count, that claim will be dismissed as impermissibly duplicative or worse—as with an account stated claim like that brought here—antagonistic to the parties' written agreement.

### 3. An Account Stated Claim Can't Be Used to Purloin New Contract Rights.

The foregoing reveals a more fundamental concern with Simplus's account stated claim. During argument, Simplus posited that its account stated claim would allow it to recover damages without "hav[ing] to prove all the elements of a breach of contract"—in other words, Simplus believes it could recover with no regard or reference to performance, breach, or the "nitty-gritty" of the parties' contractual

---

[114] *See Intermec IP Corp.*, 2021 WL 3620435, at *18-20 (where the implied covenant claim's facts were the same as the express breach-of-contract claim's, the breach of implied covenant claim was impermissibly duplicative and dismissed); *see also Bos. Sci. Corp. v. N.Y. Ctr. for Specialty Surgery*, 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015) ("[W]here a claim for an account stated arises out of events already the subject of a valid enforceable contract, recovery is precluded."); *Locus Techs. v. Honeywell Int'l, Inc.*, 2021 WL 1651388, at *11 (S.D.N.Y. Apr. 7, 2021) (dismissing an account stated claim because it "is duplicative of [the] breach of contract claim").

[115] *See EZLinks Golf, LLC*, 2017 WL 1312209, at *6 ("Failure to plead separate damages is an independent ground for dismissal."); *ITW Glob. Invs. Inc. v. Am. Indus. Partners Cap. Fund IV, L.P.*, 2015 WL 3970908, at *5 (Del. Super. Ct. June 24, 2015) ("[D]amages allegations [for an independent cause of action] may not simply 'rehash' the damages allegedly caused by [a] breach of contract." (internal citations omitted)); *see also Locus Techs. v. Honeywell Int'l, Inc.*, 2021 WL 1651388, at *11 (S.D.N.Y. Apr. 7, 2021) (where the subject contract allowed recovery of nothing more than the amounts of the unpaid invoices, "the sought-after remedies in the breach of contract and account stated claims [are] duplicative . . .").

arrangement.[116] Given this explanation, it is no wonder the account stated claim duplicates both the substance and damages of the breach-of-contract claim. In essence, the account stated claim was intended as a short-cut for obtaining contract damages.

Delaware law will not tolerate use of an account stated claim in this manner. "[W]ith very limited exceptions, our courts will enforce the contractual scheme that the parties have arrived at through their own self-ordering, both in recognition of a right to self-order and to promote certainty of obligations and benefits."[117] "Upholding freedom of contract is a fundamental policy of this State."[118] Delaware's contractarian principles have guided its courts in developing a nuanced jurisprudence for the analysis and enforcement of contracts.

A well-settled and basic tenet of Delaware contract law is that "a party may not come to the court to enforce a contractual right it did not obtain for itself at the negotiating table."[119] Neither will courts "rewrite contracts to read in terms that [parties] could have, but did not, obtain at the bargaining table."[120] Indeed, our

---

[116] Hearing Tr. at 20.

[117] *Ascension Ins. Holdings, LLC v. Underwood*, 2015 WL 356002, at *4 (Del. Ch. Jan. 28, 2015) (internal citations omitted).

[118] *Id.* (internal citations omitted).

[119] *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2012 WL 2356489, at *7 (Del. Ch. June 21, 2012) (citing *Allied Cap. Corp. v. GC–Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006)).

[120] *Id.* at *6 (citing *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010)).

courts are "most chary about implying a contractual protection when the contract could easily have been drafted to expressly provide for it."[121] "This is because a court's role in interpreting contracts is to effectuate the parties' intent. For a court to read into an agreement a contract term that was [not included] . . . would be to create new contract rights, liabilities and duties to which the parties had not assented in contravention of that settled role."[122]

These principles are dutifully adhered to and hold especially true for sophisticated parties engaged in arms-length negotiations.[123] Our law "presumes parties are bound by the language of the agreement they negotiated" and "respect[s] the ability of sophisticated businesses . . . to make their own judgments about the risk they should bear"[124] and the protections they should incorporate.

This Court regularly sees language in the service agreement contracts forged by sophisticated parties that details the specifics of their invoicing, payment,

---

[121] *Allied Cap. Corp.*, 910 A.2d at 1035 (citing *Harris Trust and Savings Bank v. E–II Holdings, Inc.,* 926 F.2d 636, 644 (7th Cir. 1991)).

[122] *GRT, Inc.*, 2012 WL 2356489, at *7 (citing *Lorillard Tobacco Co. v. Am. Legacy Found.,* 903 A.2d 728, 739 (Del. 2006); *Allied Capital Corp.,* 910 A.2d at 1030; *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.,* 616 A.2d 1192, 1196 (Del. 1992)) (internal quotations omitted).

[123] *See W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2007 WL 3317551, at *9 (Del. Ch. Nov. 2, 2007) ("The presumption that the parties are bound by the language of the agreement they negotiated applies with even greater force when the parties are sophisticated entities that have engaged in arms-length negotiations."), *aff'd*, 985 A.2d 391 (Del. 2009).

[124] *Julius v. Accurus Aerospace Corp.*, 2019 WL 5681610, at *9 (Del. Ch. Oct. 31, 2019), *aff'd,* 241 A.3d 220 (Del. 2020) (internal citations and quotations omitted).

-27-

"deemed approved," and invoice resolution process.[125]  Simplus's and Trimble's

MSA has no such language.  And the Court cannot allow it to be effectively added

thereto via some conjured account stated claim.

Speaking of just such a circumstance recently, one court noted "not every debt

. . . can form the basis of an account stated, particularly when it is being used as a

substitute for an action of debt upon a contract involving a contractually specified

sum, because a creditor under these circumstances is not required to resort to a new

contract to collect such a debt."[126]  Yet, through the attempted account stated claim,

either a "new contract" or, at very least, newly engrafted contract rights are precisely

what Simplus attempts to impose in the parties' already self-ordered relationship.

As another court has explained, that cannot happen:  "a claim for an account stated

may not be utilized simply as another means to attempt to collect under a disputed

---

[125]  For instance, in *Parexel International (IRL) Ltd. v. Xynomic Pharm., Inc.*, the parties' Master Services Agreement ("MSA"), through which Parexel provided research services for a clinical trial prescribed invoicing procedures as follows:

> (1) the undisputed portions of any invoice for services performed under the MSA and any work order were due thirty (30) days from receipt; (2) any disputed invoiced items had to be raised, with notice to Parexel in writing with specificity, within ten (10) business days from the invoice date; (3) any invoiced items that were not disputed by Xynomic within ten (10) business days of the invoice date were deemed approved; and (4) interest was to be paid on any unpaid invoice at the rate of one percent (1%) until such invoice is paid in full.

2021 WL 3074343, at *1-2 (Del. Super. Ct. Jul. 21, 2021).

[126]  *Veritas Techs. LLC v. Cushman & Wakefield, Inc.*, 2022 WL 222527, at *8 (N.D. Cal. Jan. 25, 2022) (cleaned up).

contract."[127]

If Simplus seeks to recover damages for unpaid invoices under its contract with Trimble, then it's just going to have get into the "nitty-gritty" of its performance thereunder, Trimble's alleged breach, and the possible claims and defenses afforded its adversary under Delaware contract law. There is no shortcut to judgment via an account stated route here.

## V. CONCLUSION

Among other failures, Simplus has wholly relied on an implied assent principle to devise its account stated claim. In turn, it has failed to plead a reasonably conceivable account stated claim under Delaware law. What's more, Simplus's account stated claim is entirely duplicative of its breach-of-contract claim—both in the facts pleaded to establish each and in the damages sought thereunder. Finally, an account stated claim may not be used as a vehicle to recover contract damages without proving a breach-of-contract claim. This is a situation where redundancy should not only be avoided, but is intolerable.

Accordingly, Trimble's Motion to Dismiss Count II is **GRANTED.**

**IT IS SO ORDERED**.

Paul R. Wallace, Judge

cc: All Counsel via File and Serve

---

[127] *Martin H. Bauman Assoc. v. H & M Int'l Transp.*, 567 N.Y.S.2d 404, 409 (N.Y. App. Div. 1991).